JAMES D. BRONSON AND GEORGE H. PRINCE AS SURVIVING TRUSTEES UNDER A TRUST CREATED BY C. N. NELSON, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7702.   Promulgated May 27, 1927.

The decedent during his lifetime and on or about August 9, 1917, transferred practically all of his property, consisting principally of stocks and other securities, to a New York bank as trustee, such trust instrument providing for the distribution of the corpus of the trust after his death by three individuals. Decedent died on May 24, 1923, and left a will in which was incorporated the provisions of the trust instrument theretofore executed. In the will decedent appointed the three individuals as executors and trustees of his estate. The will was not probated but the estate was administered and settled by the individuals designated by the decedent in conformity with the provisions of the will and the trust. The three individuals performed the usual and customary services in the administration of the estate and for such services between the date of death and the date on which they took over the property of the estate as trustees, they determined and paid themselves on May 19, 1924, reasonable compensation of $10,000 each, and also paid reasonable attorneys' fees for services rendered in the administration of the estate in the total sum of $30,000. *Held*, that under the provisions of section 403 (a) (1) of the Revenue Act of 1921, these amounts were proper deductions from the value of the gross estate in determining the value of the net estate for the purpose of the tax.

*Francis D. Butler, Esq.*, and *Pierce Butler, Jr., Esq.*, for the petitioners.

*John F. Greaney, Esq.*, for the respondent.

The Commissioner determined a deficiency in estate tax under the Revenue Act of 1921 in the amount of $12,328.75, of which approximately $8,400 is in controversy. The petitioners claim that certain payments, totaling $30,000 to trustees and $30,000 to attorneys, for services rendered in the administration and settlement of the estate of C. N. Nelson, are deductible as administration expenses in ascertaining the value of the net estate for the purpose of the estate tax.

### FINDINGS OF FACT.

Some time prior to August 9, 1917, Charles N. Nelson, a resident of the State of New York, incorporated his business under the name of C. N. Nelson, Inc. The articles of incorporation provided for 10,000 shares of common stock. In exchange for such stock Nelson transferred practically all of his property of the value of approximately $3,000,000 to the corporation. On August 9, 1917, he trans-

ferred all of his interests in the corporation to certain persons named in the deed, in trust, reserving to himself all the income therefrom, together with the right to alter or revoke the trust instrument at will. The trust deed provided for the care of the property and distribution of the proceeds arising therefrom to Nelson during the remainder of his life and after his death until the death of all of his descendants named therein, and for the final disposition of the property on the death of the last surviving beneficiary thereunder.

Coincident with the execution of the trust deed the decedent made and subscribed to his last will and testament and incorporated therein the trust deed, which constitutes 12 of the 14 pages of his will. Aside from the disposal of property not covered by the trust, the provisions for the disposition of the estate on testator's death remained as provided for by the deed of trust. He bequeathed the property not included in the trust to his wife, with a provision that if she should not survive him, then his executors named in the will should convert this remainder into money or such interest-bearing obligations as they should deem safe and wise, and pay, transfer and deliver the same to Robert S. Davis, James D. Bronson, and George H. Prince, as trustees, or their successor or successors, and thereupon all monies so paid and all property so transferred and delivered should merge into and become a part of the principal of the trust fund and properties thereinbefore mentioned, and theretofore or by the will vested in said trustees, as thereinbefore recited, and should be held, invested, treated and distributed as such.

The trustees under the deed were authorized to alienate the whole or any part of the property covered thereby and required to reinvest the proceeds at interest during the continuation of the trust period. The executors of the will were authorized to sell the whole or any part of the testator's property and to execute and deliver all writings necessary to pass title thereto.

Three codicils to the will were made for the purpose of incorporating therein the amendments to the deed of trust executed October 15, 1917, December 23, 1919, and June 17, 1921, and bear the respective dates of such amendments. None of these six instruments make any change in the originals material to the decision of the issue here involved. The amendment executed October 15, 1917 was reexecuted May 10, 1920. An amendment to the deed of trust, executed June 22, 1920, contains the following provision:

Now, Therefore, I, the said Charles N. Nelson, do hereby revoke the appointment of the said Robert S. Davis, James D. Bronson, and George H. Prince as trustees of said trusts, and do hereby nominate and appoint *Bankers Trust Company of New York*, of the State of New York, sole trustee of said trusts, to hold said office until my death. Upon my death, the said *Bankers Trust Company* shall cease to hold the office of trustee. and I hereby nominate

and appoint the said Robert S. Davis, James D. Bronson and George H. Prince, as trustees of said trusts from and after the date of my death. The property now forming the said trust estate shall be forthwith transferred by the present trustees to the new trustee herein named, and, upon my death, the new trustee or its successors shall forthwith transfer the trust estate to said Robert S. Davis, James D. Bronson and George H. Prince, their survivor or survivors, successor or successors, as the case may be, as trustees.

Nelson died May 24, 1923. By virtue of the will, Davis, Bronson, and Prince, designated as executors and trustees, immediately came into possession of the estate of the approximate value of $3,000,000. Although they were the executors named in the will, they decided not to probate the will. They proceeded forthwith to marshal the assets of the estate, to determine and pay debts, charges, etc. They at once employed counsel. They inventoried and valued the entire property, about half of which consisted of common stock of corporations and bank stocks not listed. The decedent had investments totaling about $150,000 in the Bahama Islands and in California which were practically a failure and the valuation of these investments was very complicated. Davis, Bronson, and Prince ascertained and paid the funeral expenses, debts and charges against the estate, prepared Federal income and estate-tax returns and New York transfer-tax returns, and paid such taxes. During the administration of the estate at least one of the trustees was compelled to rearrange his personal business affairs for a period of one year in order to perform the duties required of him in connection with the settlement of the estate. Davis, Bronson, and Prince performed the aforementioned services, and such other services as were required under the will and trust instrument, within two years after the death of Nelson, for which they allowed and paid themselves reasonable compensation of $10,000 each, or a total of $30,000, and in addition determined, allowed and paid the attorneys employed for services during the same period in connection with the settlement of the estate reasonable fees, totaling $30,000. These amounts were paid on May 19, 1924. Thereafter Davis, Bronson, and Prince held the property as trustees under the trusts created and received each $500 per annum compensation.

OPINION.

LITTLETON: There is no controversy as to the facts in this proceeding nor is there any dispute concerning the reasonableness of the fees paid for the services performed.

The value of the decedent's gross estate transferred at death by specific devise and bequests, and in trusts, was $2,899,093.69. Davis, Bronson, and Prince took possession of this estate upon the death of Nelson under the appointment in the will. They, as well as the

attorneys employed by them, did a great deal of work in marshaling this estate, valuing assets, determining and paying debts, claims, taxes, etc., in the settlement of the estate prior and preparatory to taking over and administering the property conveyed in trust. During the period for which the fees in controversy are claimed, these gentlemen were not merely acting as trustees under a trust. They were administering and settling the estate in the same manner as regularly appointed executors or administrators would. That they did not see fit to probate the will and obtain letters testamentary as executors we think makes no difference in the matter of allowance of the fees as deductions from the gross estate under section 403 of the Revenue Act of 1921. The laws of the State of New York, the jurisdiction under which this estate was administered, permit and. make allowance for expenses of this character.

Section 285 of the New York Surrogate's Court Act provides in part that—

On the settlement of the account of any executor, administrator, guardian or testamentary trustee, the surrogate must allow to him his just, reasonable and necessary expenses actually paid by him, * * * and in addition thereto the surrogate must allow to such executor, * * * for his services in such official capacity, and if there be more than one, apportion among them according to the services rendered by them respectively: * * * The value of any real or personal property, to be determined in such manner as the surrogate may direct, and the increment thereof, received, distributed or delivered, shall be considered as money in making computation of commissions. But this shall not apply in case of a specific legacy or devise.

This is a mandatory provision, that such expenses as are here involved *must* be allowed when the court is supervising the administration of the estate. The court has no discretion in the matter of allowing such expenses except perhaps as to the reasonableness thereof and that feature is not involved in this proceeding and if it were this Board could determine the reasonableness of the amount. *Una Libby Kaufman, Executrix,* 5 B. T. A. 31.

The Commissioner allowed deductions amounting to $97,994.77 from the value of the gross estate and determined thereby that the value of the net estate transferred was $2,801,098.92 and the total tax upon the transfer to be $273,653.85. Davis, Bronson, and Prince in administering the estate made an estate-tax return showing a tax of $261,325.10, which was paid. The Commissioner contends as a justification for his action in disallowing the $60,000 that while " there is no question but that executors' commissions and attorneys' fees fall within the classification of ' administration expenses,' as used in the Federal statute herein previously quoted, provided such commissions and fees are actually incurred, expended, and approved by the Surrogate in connection with the administration of the estate by the executors, but, in cases like that of the estate herein con-

sidered where there was no administration by the executors, and no final accounting to the Surrogate by the executors, as such, and no final order by the Surrogate fixing the amount of the executors' commissions and attorneys' fees, it is difficult to see under what theory the deductions may be allowed in computing the Federal estate tax." And, further, he contends that " assuming that the services performed by the trustees partook of the nature of the services usually performed by executors, the deductions claimed will still be not allowable for the reason that no final account has been, or will be, presented for the consideration and approval, or disapproval, of the Surrogate. The same is true with respect to the fees paid to the attorneys by the trustees." Finally the Commissioner insists " that under the construction placed upon the section referred to [403 of the Revenue Act of 1921] in his regulations [article 36, Regulations 63], it is not believed that the amounts claimed are deductible. There was no administration upon the estate whatever in the probate courts, and consequently the expenses involved are not determined to be administration expenses within the meaning of the law." In his Regulations 63, article 36, the Commissioner states that :

The amount deductible as executor's or administrator's commissions is such amount as has actually been paid or which at the time the return is filed it is reasonably expected will be paid, but no deduction will be allowed if no commissions are to be collected. Where the amount of the commissions has not been fixed by decree of the proper court, the deduction will be allowed on the final audit of the return provided: (1) That the Commissioner is reasonably satisfied that the commissions claimed will be paid; (2) that the amount entered as a deduction is within the amount allowable by the laws of the jurisdiction wherein the estate is being adm'nistered; and (3) that it is in accordance with the usually accepted practice in said jurisdiction in estates of similar size and character. Where the comm'ssions claimed have not been awarded by the proper court the Commissioner on final audit may disallow the deduction in part or in whole, as the circumstances in his judgment justify, subject to such future adjustment as the facts may later require. If the deduction is allowed in advance of payment and payment is thereafter waived, it shall be the duty of the executor to notify the Commissioner.

We think that in so far as this regulation undertakes to restrict the allowance of administration expenses to those items which have been fixed and awarded by a decree of a proper court, it is a too narrow construction of the Act and should not be followed.

We think that by section 403 (a) (1) of the Revenue Act of 1921 Congress intended that the value of the gross estate should be reduced by the amount of such usual and customary expenses incident to the administration and settlement of estates as are permitted and authorized by the laws of the jurisdiction under which such estate is administered and settled without specifically naming them,

The language of the section is broad and should be given a liberal interpretation. The section does not provide that such amounts may be deductible only when fixed and approved by a decree of some court of the jurisdiction, as the Commissioner would have us interpret it, but such amounts as are allowed, permitted or authorized by the laws. The Surrogate's Court Act, section 285, as amended by chapter 649, Laws of 1923, provides a sliding scale of commissions for testamentary trustees and under this schedule the fees of the trustees here would amount to approximately $60,000 instead of $30,000, as actually paid and claimed. What does "administration" mean? Its ordinary meaning in connection with estates of deceased persons is the holding and management of property during the period before distribution, the collection of assets, ascertainment and payment of debts and taxes. Probate proceedings are not essential to this purpose. If an administrator is appointed by a court he performs the above services and distributes the property in accordance with the intestate laws. If an executor is appointed he is granted letters testamentary. He performs the same services and distributes in accordance with the will. Here the trustees perform the same services and make distribution in accordance with the trust deed. The only reason that can be given for determining that these amounts do not fall within the term is that no formal probate of the will was had. We think that is not enough. The amount here involved was an administration expense.

In the *Appeal of Samuel E. A. Stern, et al., Executors*, 2 B. T. A. 102, the Board held that in allowing deductions from the gross estate in computing estate taxes, Congress did not intend that determination of the tax should await final settlement of the estate and a reduction to absolute certainty of all claims against it, and that deductions for executors' commissions might be based upon a reasonable estimate of the amount allowable by the *lex domicillii* and it is not essential that such commissions be first allowed by order of court or paid. Compare *Appeal of Grace M. Knox, et al., Executors*, 3 B. T. A. 143; *Appeal of Henry Riffel*, 3 B. T. A. 436; *Appeal of Salina Bell, Executrix*, 3 B. T. A. 1172; *Mrs. Browning Coleman Moore, Executrix*, 5 B. T. A. 255; *William W. Mead, et al., Executors*, 6 B. T. A. 752.

The statute refers to expenses "allowed by the laws of the jurisdiction" not those expenses fixed and awarded by a decree of a probate court. The Board is of the opinion that the amount of $60,000 claimed was a proper deduction from the value of the gross estate in determining the net estate for the purpose of tax, and that the Commissioner erred in not allowing such deduction.

> *Judgment will be entered on 15 days' notice, under Rule 50.*