ETHEL P. HUNT, ET AL., EXECUTRICES, ESTATE OF JOHN K. HUNT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9801. Promulgated June 5, 1928.

*H. Earlton Hanes, Esq.,* for the petitioners.
*R. E. Copes, Esq.,* for the respondent.

OPINION.

LOVE: This is an appeal relating to an estate tax. The issues present numerous questions purely of fact. The evidence for the most part is so meager as to preclude a revision of many of the items contended for by petitioners. In order to reflect the situation clearly we have included in the findings, in some instances, facts which appear to be of rather attenuated relevancy. In some of the questions petitioners are claiming error not on the part of respondent but in their original return filed for estate-tax purposes.

The first issue includes a number of questions of the fair values of assets included in the gross estate.

A factory building located at Mill and Commercial Streets, Rochester, N. Y., was valued in the return at $120,000. Petitioners now contend that the value was $65,000. A residence property located on Lake Avenue, Rochester, N. Y., was valued in the return at $40,000. Petitioners now contend that the value was $30,000. The amounts of the values now claimed rest upon the opinion of a single valuation witness. We are not satisfied that his valuations are more than retrospective appraisals made without knowledge of the properties as they existed on the date of the death of decedent. The comparative sales offered in evidence are remote in point of time, and deficient in comparative details. We can not revise the valuations reported in the return, and hence approve the action of the Commissioner as to those two items.

A value of $210 per share for 10 shares of the capital stock of the Lincoln-Alliance Bank, of Rochester, N. Y., was reported in the return. Respondent has increased the total number of shares to 27,

and has valued the shares at $280 each. Petitioners do not deny holding the number of shares determined by respondent but they claim the value of the stock was $260 per share. From the evidence we believe the fair value was $280 per share. Respondent is sustained on that item.

A value of $105 per share for 2,010 shares of common stock of the Eastman Kodak Co. was reported in the return. Respondent has increased the value to a price per share in excess of $107. On the New York Stock Exchange the prices for the stock were reported at $106 bid, and $106⅜ asked. We think the stock did not have a value in excess of $106⅜ and hold that respondent's valuation should be revised to $106⅜.

A value of $80 per share for 500 shares preferred stock of the Alderman-Fairchild Co. was reported in the return. Respondent has valued this stock at $100 per share, and in addition has added to the gross estate 440 shares of the common stock of the same company, also at $100 per share. Petitioners do not deny holding the additional 440 shares which were not reported in the return, but they claim the stock should be valued at $70 per share for the preferred and $10 per share for the common. In our opinion there is no basis for such low valuations of the stocks, and for want of sufficient evidence to justify any other value, the determination of the Commissioner as to that issue is approved.

With reference to the value of 250 shares of the capital stock of the Commercial Paper Box Co. reported in the return without value, and valued by respondent at $25,000, respondent is sustained for lack of evidence of any determinable amount.

The respondent has included in the gross estate, life insurance payable to the estate in the amount of $24,058.68. The actual amount of insurance received by the executrices was $22,058.68. No greater value than $22,058.68 should be included in the gross estate in respect of this insurance.

It is in evidence and uncontroverted that a fair value of $1,300 was correctly reported in the return for the indebtedness of John Ward and wife secured by mortgage on what was sometimes referred to as the "Mulvani" property, and respondent has added to the gross estate a value of $1,820.58 attributed to a "Mulvani note and mortgage," which is the same as the Ward indebtedness, and therefore the $1,820.58 should be eliminated from the gross estate.

One question remains under the first issue. It relates to a corporation known as M. B. Shantz, Inc., which went into bankruptcy a few months after the death of decedent. The corporation was indebted to decedent on two promissory notes and, also, on open account. Decedent was liable under his guarantees of certain obligations of the corporation. The items are set out in the findings. After the elimi-

nation of confusing details, the contentions of petitioners are found to amount to this, that the indebtedness of the corporation to decedent was valued by respondent in the amount of $60,125.98; that the estate actually received $62,632.53; that the respondent deducted from the gross estate an aggregate of $7,684.61 attributable to the guarantees of the accounts of the corporation with Pike and the Whithouse-Davis Co.; that the payments by the estate actually aggregated $14,550.56; that giving effect to these subsequent transactions, the amount of this item was overstated in the amount of $4,359.40.

Even though we were disposed to give effect to the subsequent transactions, we would be unable to do so. There is no evidence of the facts and we have only statements and contentions of counsel. We can not predicate a reversal of the determination of the Commissioner on such a record. Therefore on that issue the Commissioner is sustained.

The second issue relates to the amount of executrices' commissions allowable as a deduction from the gross estate. Respondent does not contest the right to the deduction. It is in evidence and uncontroverted that commissions in the amount of $12,314.70 have been allowed by the probate court and actually paid to the executrices. A deduction in that amount should be allowed.

The third issue was abandoned by petitioners.

The fourth issue relates to the deduction from the gross estate of indebtedness of decedent amounting to $21,483.80 evidenced by a promissory note of decedent held by the Lincoln-Alliance Bank. The note is in evidence. It was paid in full by the estate on November 9, 1923. The deduction was overlooked in preparing the return and has not been allowed by respondent. It being a valid obligation of decedent properly deductible, it follows that the amount of that note, $21,483.80, plus interest to date of death of decedent, should be allowed as a deduction from gross estate.

*Judgment will be entered under Rule 50.*