FIRST NATIONAL BANK OF BIRMINGHAM, TRUSTEE, E. T. SCHULER TRUST FUND, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 54372, 63374. Promulgated November 15, 1933.

W. S. *Pritchard*, Esq., for the petitioner.
*Hartford Allen, Esq.*, for the respondent.

OPINION.

LANSDON : The appeals consolidated in these proceedings challenge income taxes determined for the years 1927, 1928, and 1929 in the respective amounts of $2,812.50, $1,875, and $1,456.52.

The only dispute between the parties relates to the March 1, 1913, value of certain corporation stock sold by the petitioner and upon which taxable gain in each year is at issue.

During each of the taxable years the petitioner sold a certain number of shares of the common stock of the Southeastern Power & Light Co., successor to a Canadian corporation known as the Alabama Traction, Light & Power Co., hereinafter sometimes designated holding company. The only assets of the holding company were stocks of domestic corporations and their subsidiaries. The sales here involved are of stock which the petitioner received in exchange for original stock in the holding company, acquired prior to March 1, 1913, increased by other shares received through stock dividends. The parties agree that petitioner's shares, at the time of sales, with additions, amounted to ten times the original number acquired in the holding company and seek to establish the cost of the stock sold by showing the fair market value at March 1, 1913, of the original stock and dividing that value by ten.

The holding company owned a number of subsidiaries, and, to show the value of its stock on the basic date, the petitioner sought to establish the value of the subsidiary company's properties by several witnesses who testified at the hearing. One was an accountant who, since July 1923, had been auditor of one of the subsidiaries known as the Alabama Power Co. He told in his testimony about the development of the Alabama Power Co., stating that in 1912, from March 1 to August 6, inclusive, it acquired some eleven utility corporations. He did not state, however, what assets these acquired utility corporations owned, or their financial condition. This witness made a valuation table of the properties of the Alabama Power Co. as of July 1, 1913, upon information supplied by its treasurer, but at no time was there any audit of the holding company's properties. Because of its vagueness and hearsay character, the testimony of this witness is without value to us in this inquiry. *Lee Sturgess, Administrator*, 2 B.T.A. 69; *Seminole Hills Land Co.*, 8 B.T.A. 882; *Huron Building Co.*, 15 B.T.A. 1107.

E. T. Schuler, another witness, testified for the petitioner. He was managing agent for the Coosa Land Co., which owned a one-third interest in the Alabama Power Co., acquired in 1912. Schuler testified, in direct examination, that his company purchased 3,000 shares of the holding company's capital stock for $100 per share in 1913, but on cross-examination corrected this as to the year and stated that the purchase was made in 1912. He knew of no market value or quotation for this stock at any time, or of sales of it in the United States in 1913, but on cross-examination said that he knew of a sale made in London on or about March 1, 1913, at $40 per share. The witness, on cross-examination, admitted that he once placed a March 1, 1913, value on this stock of $40 per share in making out income tax returns for himself and the Coosa Land Co., but explained that these were temporary estimates made in the absence of correct information. Later, he filed amended returns and increased those values to $160 per share. Schuler's opinion was that the physical properties owned by all of the subsidiaries of the holding company had a fair and reasonable market value on March 1, 1913, of from thirty to forty million dollars.

Three other witnesses testified for the petitioner at the hearing and one of these expressed his opinion that the physical assets of all of the subsidiary corporations belonging to it on March 1, 1913, were worth from forty to fifty million dollars. The others expressed no opinion.

There was no market for the Alabama Traction, Light & Power Co. stock in the United States in 1913, and the only evidence in the record of the underlying values of the assets is the bare estimates made as to the value of the physical properties of its subsidiaries. If these estimates were properly supported by inventories or other basic data, so as to enable us to determine the gross value of all assets owned by the holding company, we would still be unable to value the stock, because there is no showing as to offsetting liabilities or the number of shares into which the authorized capital was divided. We cannot accept opinions in substitution for facts and, therefore, are unable to determine the basic value of the holding company's stock from the proof thus offered. *Tracy* v. *Commissioner*, 53 Fed. (2d) 575; *American Anchor Co.* v. *Commissioner*, 42 Fed. (2d) 99; *Am-Plus Storage Battery Co.* v. *Commissioner*, 35 Fed. (2d) 167.

Obviously the stock had some intrinsic value on March 1, 1913, although the company's earnings are at no time indicated. Some 3,000 shares of the stock were sold in 1912 for $100 per share and 500 more in some other year not shown at $8 per share. Five hundred shares were sold in London about March 1, 1913, at $40 per share.

We think the first two sales mentioned are too remote in time to furnish any guide for fixing values of March 1, 1913. *Estate of A. Plumer Austin*, 10 B.T.A. 1055; *Ethel P. Hunt et al., Executrices*, 12 B.T.A. 396. Between these extremes we have the price of $40 per share paid in London at about the basic date. This price, while in no way conclusive of what the value of the stock was in the United States is, to say the least, evidence of what some one was willing to pay for it on that date; and, being identical in point of time, we are obliged to accept such indication of value as the best proof under the circumstances of the true value on March 1, 1913.

We, therefore, find for the purpose of this inquiry that the value of the stock of the Alabama Traction, Light & Power Co. on March 1, 1913, was $40 per share; and that the cost price to be attributed to the petitioner's stock in the Southeastern Power & Light Co., which it sold in the tax year, for computing taxable gain, is $4 for each share sold.

The respondent produced the testimony of one witness in an attempt to prove that the valuations adopted by him in his original audit were too high and to establish his claim for increased tax deficiencies. The testimony of that witness, however, dealt with facts too remote and indefinite to be of any value in this case. We, therefore, must hold that the respondent failed in that effort. His prayer for increased deficiencies is accordingly denied.

Inasmuch as our determination of the value for the stock sold confirms the base used by the respondent in his determination from which this appeal is taken, the deficiencies found by him are hereby confirmed.

> *Judgment of deficiencies in petitioner's income tax for the years 1927, 1928, and 1929 in the respective amounts of $2,812.50, $1,875, and $1,456.52 will be entered.*