GEORGE W. OLDHAM ET AL., EXECUTORS, ESTATE OF JAMES L. HAWLEY, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT. .

Docket No. 79699.   Promulgated September 17, 1937.

*Robert J. Riley, Esq.,* for the petitioners.
*John D. Kiley, Esq.,* for the respondent.

526

## OPINION.

MILLER:[1] This case involves the question whether a fee paid to the curator of an estate, appointed under the law of West Virginia, constitutes an ordinary and necessary expense, deductible from the income of the estate for tax purposes. The fee in question has already been allowed by the Commissioner as a deduction for estate tax purposes. Consequently, it is necessary to distinguish between services rendered for purposes of administration, and services rendered for the purpose of carrying on a business and producing income for the estate.

The facts upon which the question turns are briefly summarized as follows: The decedent died, domiciled in West Virginia, on November 13, 1930, leaving an estate of about $2,000,000 and two wills. Immediately a controversy arose in the county court as to which will was valid. On November 20, 1930, the court appointed the Wheeling Bank & Trust Co., "curator", as provided in such circumstances by West Virginia law.[2] The company qualified and assumed the curator's duties, which involved the administration of a large and complicated estate, including the leasing of city realty, insuring and keeping it in repair, procuring desirable tenants, paying taxes, and collecting rents, interest, and dividends. The curatorship continued until August 18, 1932, a period of 21 months, at which time the executors, successful in the will litigation, qualified. Because of the large amount of work involved, the curator claimed a substantial fee for its services; this was compromised, and the flat sum of $25,000 for its services throughout the whole period was

---

[1] This report was prepared during Mr. Miller's term of office.

[2] West Virginia Code of 1932, § 4124, p. 1263:

"When Curator May Be Appointed; His Duties.—The county court, or clerk thereof during the recess of the regular sessions of such court, may appoint a curator of the estate of a decedent; during a contest about his will, or during the infancy or in the absence of an executor, or until administration of the estate be granted, taking from him a bond in a reasonable penalty.

"The Curator shall take care that the estate is not wasted before the qualification of an executor or administrator, or before such estate shall lawfully come into possession of such executor or administrator. He may demand, sue for, recover, and receive all debts due to the decedent, and all his other personal estate, and when there is a will may, or if a will be in contest shall, with respect to any real estate whereof the decedent or testator may have died seized or possessed, exercise such rights as the executor or administrator with the will annexed could exercise, including the collection of any rents and profits of such real estate and the leasing of the same for a term not exceeding the period of the curator's incumbency. Upon the qualification of an executor or administrator, such curator shall account with the executor or administrator for, and pay over to him, such estate as came into such curator's hands or for which he is liable. (Code 1849, c. 122, § 24; Code 1860, c. 122, § 24; Code 1868, c. 118, § 3; 1882, c. 84, § 23; Code 1923, c. 77, § 23.)

agreed to, allowed by the county commissioner of accounts, and paid in October 1932; whereupon, it surrendered the estate's assets to the executors. This sum of $25,000 is the curator's commission now in question.

The statute (sec. 303 (a) (1), Revenue Act of 1926) provides that administration expenses may be deducted from the value of the gross estate in determining the value of the net estate for estate tax purposes. See also Treasury Regulations 70, art. 32.[3] The statute provides generally (sec. 23 (a), Revenue Act of 1932) for the deduction of ordinary and necessary expenses from gross income for the purpose of determining income tax (see also, in this connection, Treasury Regulations 77, art. 282 [4]), and in section 162 of the Revenue Act of 1932 it is provided that the net income of an estate shall be computed in the same manner and on the same basis as in the case of an individual, with several exceptions which are not material in this case.

Ordinarily the fees and commissions of executors, administrators, attorneys, and other representatives of estates are regarded as administration expenses and are applied against the gross estate in determining the estate tax. Ordinarily such fees and commissions are not allowable as deductions in determining the net income of the estate. *William W. Mead et al., Executors*, 6 B. T. A. 752, 757; *Leonard Holden Vaughan, Coexecutor*, 10 B. T. A. 140; *Charles B. Power et al., Executors*, 11 B. T. A. 1313; *Ethel P. Hunt et al., Executrices*, 12 B. T. A. 396; *James C. Ayer et al., Trustees*, 26 B. T. A. 9, 12; *John A. Loetscher et al., Executors*, 14 B. T. A. 228.

Where, however, such fees or commissions are paid for services, rendered exclusively in carrying on the affairs of the estate as a business, rather than in preparing it for settlement and distribution, such payments constitute ordinary and necessary expenses and may be deducted for income tax purposes. *Grace M. Knox et al., Executors*, 3 B. T. A. 143; *William W. Mead et al., Executors, supra;* *George W. Seligman, Executor*, 10 B. T. A. 840; *Henrietta Bendheim*, 8 B. T. A. 158; *Charles Lesley Ames, Executor*, 14 B T. A.

---

[3] ART. 32. *Administration expenses.*—The amounts deductible from the gross estate as "administration expenses" are such expenses as are actually and necessarily incurred in the administration of the estate; that is, in the collection of assets, payment of debts, and distribution among the persons entitled. The expenses contemplated in the law are such only as attend the settlement of an estate by the legal representative preliminary to the transfer of the property to individual beneficiaries or to a trustee, whether such trustee is the executor or some other person. Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions. Administration expenses include (1) executor's commissions; (2) attorney's fees; (3) miscellaneous expenses. Each of these classes is considered separately in Articles 33 to 35, inclusive.

[4] ART. 282. * * * Expenses of the administration of an estate, such as court costs, attorneys' fees, and executors' commissions, are chargeable against the corpus of the estate and are not allowable deductions. * * *

1067; *Margaret B. Sparrow*, 18 B. T. A. 1; *Florence Grandin*, 16 B. T. A. 515; *Estate of William G. Peckham*, 19 B. T. A. 1020, 1023; *Chicago Title & Trust Co. et al., Trustees*, 18 B. T. A. 395; *H. Alfred Hansen, Executor*, 6 B. T. A. 860.

Frequently, the facts of particular cases do not lend themselves to easy determination of the character of such expenses. Most solvent estates, such as the one in the instant case, are going concerns, producing income; though it be no more than interest from a savings account, a bond or a promissory note, or rent from a farm or dwelling house. The normal and usual activities of the representative of the estate include the collection of such income, the paying of debts and taxes, the making of repairs, the execution of leases, the placing of insurance, in order to prepare the estate for distribution. The fact that such activities also constitute the ordinary incidents of carrying on business does not constitute the expenses thereof expenses which may be charged against income if they are a part of a normal and usual process of administration.

The test most frequently used to distinguish between the two types of expenses is whether the estate has been or is required to be kept intact beyond the period usually necessary for administration. If the process of administration goes forward in normal course, and distribution and settlement are completed within a usual and reasonable time, the expenses of the representatives of the estate are regarded as administration expenses. *Leonard Holden Vaughan, Coexecutor, supra; Charles B. Power et al., Executors, supra; Ethel P. Hunt et al., Executrices, supra; H. Alfred Hansen, Executor, supra; Estate of William G. Peckham, supra*, p. 1023. On the other hand, in cases where, according to the provisions of the will or testamentary trust, it is necessary to continue the estate intact over a period of years, and to carry on its affairs as a business in the interim, the fees and commissions paid to representatives of the estate for such services constitute expenses, deductible for income tax purposes. *William W. Mead et al., Executors, supra; H. Alfred Hansen, Executor, supra; Florence Grandin, supra*. And where the will went further and, in addition to providing for the creation of a trust to run for a long period of time, provided for the payment to the executors of annual salaries out of the income of the estate, in lieu of fees, commissions, and compensations provided by law, it was held to be apparent that such payments were intended to be applied to the carrying on of a business and were properly chargeable against income. *Grace M. Knox et al., Executors, supra; Thomas H. Franklin et al., Executors and Trustees*, 11 B. T. A. 148.

In distinguishing between the two types of expense, one of the text writers draws the line between "initial expenses" and "current

expenses." Montgomery & Magill, Federal Taxes on Estates, Trusts, Gifts, 1936–1937, p. 39. This suggestion is supported by the decision in *Estate of William G. Peckham*, *supra*, where the will required that the estate be kept intact for six years, and the action of the Commissioner in allowing as deductions for estate purposes only those executors' commissions paid during the first three years of administration was held to be reasonable and proper. The opinion of the Board states: "The respondent takes the position that in computing the net estate there should be allowed as deductions only such fees and expenses as would be incurred and paid if the estate were administered within the time usually required for that purpose. We are of the opinion that the position of the respondent is well taken. * * * The executors herein, in addition to performing the usual duties of executors, also perform duties and services which are essentially those of trustees. The respondent has allowed as deductions in computing the net estate expenses incurred and paid up to July 29, 1927, which was more than three years after the decedent's death, and more than the period that would be required for the ordinary administration of the estate; and in view of the decisions cited we are of opinion that the additional fees, commissions, and expenses in controversy are not proper deductions in computing the net estate of the decedent, and that the respondent did not err in disallowing them."

It is apparent, upon the facts of the *Peckham* case, that the services performed by the executors were no more for one purpose than the other during the two periods of three years each. In fact, the final services of the executors, in distributing the estate, come within the second period. But the apportionment made by the Commissioner, although more or less arbitrary, was equitable in its result and consistent with the principle frequently enunciated by the Board concerning expenses of estates kept intact beyond the ordinary administration period.

Under such circumstances, the judgment of someone must operate and the discretion of someone must be exercised. The effect of the rule making the determination of the Commissioner prima facie correct is to uphold his judgment and his exercise of discretion, unless the petitioner successfully maintains his burden of proof by establishing clearly that the Commissioner was wrong.

Where the taxpayer has sustained his burden, and the weight of the evidence supports his determination, it has been upheld by the Board, even though it too is patently an approximation, more or less arbitrarily made. Such an example is found in the case of *George W. Seligman, Executor*, *supra*, where the petitioner's allocation of an unitemized attorney's fee of $10,000, one-half for estate tax pur-

poses and the other half for income tax purposes, was approved. There the facts showed that the executors had sold assets of the estate, attempting to convert them into other assets of an income-producing character, and in this and other ways had gone beyond the usual and necessary process of preparing the estate for distribution in the usual and normal way.

Another suggested basis for distinguishing between administration expense and income-producing expense, is that of the temporary character of the agent representing the estate and the limited duties which he has to perform. Thus, in *Thomas H. Franklin et al., Executors and Trustees, supra*, the Board held that a fee paid to a temporary administrator was for services rendered in producing income from the estate during the taxable year, and hence, was deductible for income tax purposes. Where, as in the *Franklin* case, the services of a temporary representative are clearly identifiable as income-producing, rather than as preparing the estate for distribution in normal course, then the expenses of such services should be charged against income. But the mere fact of temporary representation of the estate, without more, is of no importance. In several cases the expenses of temporary representatives have been held to be administration expenses. *James D. Bronson et al., Trustees*, 7 B. T. A. 127; affd., 32 Fed. (2d) 112; *Estate of Caroline R. Rowland*, 31 B. T. A. 194, 196.

The *Franklin* case is strongly relied on by the petitioners. However, there are very substantial differences between the facts of that case and the instant one. The will which was finally admitted to probate in that case was under contest for over four years; the executors named therein were also designated as trustees; the will contemplated that the estate should remain intact for a long period and that annuities should be paid therefrom; provision was made for fees of the executors and trustees to be paid annually, in terms of certain percentages of the income of the estate; the order of the court appointing a temporary administrator directed him, among other things, "to continue and conduct all business or businesses in which the estate may be engaged or in which it may have an interest by corporate stock or otherwise"; the temporary administrator made an income tax return for the year in question, in which he deducted his fee as a charge against income for that year, together with a similar fee for his attorney; these amounts were paid for the tax year in question. None of the circumstances narrated above were present in the instant case. Even then the opinion of the Board stated, "It might very well be argued that at least some of the services of the temporary administrator and his attorneys were more properly chargeable against the corpus of the estate than against the income

of the estate. However, the weight of the evidence supports the contention that the amounts paid were reasonable compensation for personal services actually rendered in preserving and maintaining the estate and in producing income from it during the year   *   *   *." The opinion is rested upon the theory that the estate was to remain intact over a period of years and the cases relied upon were cases in which a similar continued life of the estate was contemplated.

The respondent offered evidence to prove, and we have found, that it has long been the practice of the Bureau of Internal Revenue to treat curators' fees in the same manner as executors' fees, namely, to allow them as administration expenses, provided they are allowed by the law of the state and approved by the proper officers; as they were in the present case.

The duties of the curator are identical with those of the executor under the West Virginia law, except as to the actual distribution of the property of the estate.[5] And on that point his duties come within the language of the Commissioner's regulation.[6]

Summarizing these various considerations, therefore, the petitioners here, in order to maintain their position, must show that this estate was engaged in business during the taxable year and that the expenditures in issue were paid out in connection therewith. This they have failed to do. Their own witnesses proved that the services rendered by the curator were the usual and ordinary duties performed by executors in preparing an estate for distribution. If an executor had been appointed and acting during the period of the curatorship he would have rendered the same services and there would have been no question that the cost thereof constituted administration expenses. There was no provision in the will of James L. Hawley which required that the estate be kept intact; no trust was created; no annuities were to be paid and no annual salaries or fees; no necessity existed for awaiting better prices, or awaiting the attainment of certain ages by beneficiaries; no requirement existed for carrying on a business. The elapsed time did not extend beyond the usual and normal period for administration. As in the case of *James C. Ayer et al., Trustees, supra*, where the administration of the estate was delayed by a suit respecting estate tax liability, here administration was delayed by a will contest. In both cases it is obvious that the carrying on of such suits did not constitute doing business. In the *Ayer* case we held that the petitioner failed to show that the estate was carrying on business during the period of

---

[5] See footnote 2.
[6] See footnote 3. "The expenses contemplated in the law are such only as attend the settlement of an estate by the legal representative *preliminary to the transfer of the property* to individual beneficiaries or to a trustee, whether such trustee is the executor or some other person." [Italics supplied.]

delay. They have failed equally in the present case. In other words, mere delay in administration does not convert administration expenses into expenses deductible from income.

In view of this conclusion it is not necessary to consider the further question of estoppel which was presented at the hearing and argued in the briefs.

*Decision will be entered for the respondent.*