*Decisions will be entered under Rule 50.*

ESTATE OF MRS. CORNELIA ADAIR, DECEASED, MONTGOMERY H. W. RITCHIE, ADMINISTRATOR, DE BONIS NON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 95451. Promulgated January 22, 1941.

*George Thompson, Esq.,* and *Albert G. Moss, C. P. A.,* for the petitioner.

*James H. Yeatman, Esq.,* for the respondent.

# 392

OPINION.

TURNER: There is no controversy between the parties as to whether the use of inventories of live stock is necessary to the correct determination of the petitioner's income, but they are in disagreement as to the method to be used in valuing such inventories. The respondent contends that the farm price method is the proper method and that his action in using it should be sustained. The petitioner concedes that it is not entitled to use the constant price method which it employed in filing its return. However it contends now, as prior to the determination of the deficiency, that it is entitled to use cost and that the true cost of its live stock can be ascertained through the use of a method or formula proposed by it and explained as follows:

(1) The cost of a breeding animal, born on the ranch and raised to maturity, is its cost when born plus the cost to raise it during a two year period of growth into maturity as a breeder.

(2) The cost of all calves born during the year is the sum of (1) the cost of maintaining the breeding cattle during the year and (2) the cost value of such number of said cattle as die during the year. The cost of a single calf is the said sum divided by the number of calves born during said year.

(3) The cost of all colts born during the year is the sum of (1) the cost of maintaining the breeding horses during the year and (2) the cost value of such number of said horses as die during the year. The cost of a single colt is said sum divided by the number of colts born during said year.

(4) The cost of raising calves and colts (sometimes referred to as growing animals) after they are born, and during the two year period before they mature into breeders, constitutes an additional cost of these animals. The cost to be added to said animals each year is the sum of (1) the ranch expenses applicable to said animals and (2) the cost value of such number of

said animals as die during the year. The cost to be added to each such growing animal each year is said sum divided by the number of growing animals which survive.

(5) The cost of raising steers after they are born, and during the period they remain unsold, constitutes an additional cost of these animals. The cost to be added to said animals each year is the sum of (1) the ranch expenses applicable to said animals and (2) the cost value of such number of said animals as die during the year. The cost to be added to each such steer each year is said sum divided by the number of steers which survive.

(6) The cost of a growing animal purchased is the actual purchase price plus raising cost. The cost of a grown animal purchased is the actual purchase price.

(7) All ranch expenses, other than selling, general and administrative expenses, are apportionable on a per head basis each year to the breeding and growing animals. In addition, the cost value of such number of main herd horses (saddle and work horses and mules) as die during the year is so apportionable also.

(8) Ranch expenses constitute two general classes, viz: (1) Breeding and raising expenses and (2) Selling, general and administrative expenses. Class (1) expenses are chargeable to the cost of animals produced and raised in determining gross income from live stock sales. Class (2) expenses are deductible from gross income in determining net income. Certain ranch expenses are direct expenses of breeding and raising animals. Under this class falls forage and grain, repairs to properties, depreciation and taxes. Other ranch expenses are applicable to both said general classes (1) and (2). * * * The table following shows such expenses as are incurred annually and the bases of apportionment:

| Nature of Expenses | Percentages apportioned to— | |
| --- | --- | --- |
| | Breeding and Raising Expenses | Selling General and Administrative Expenses |
| Salaries and wages: | | |
| Ranch superintendent | 80% | 20% |
| Cashier | | 100% |
| Trustees and administrator | 40% | 60% |
| Cowboys and helpers | 90% | 10% |
| Commissary | 90% | 10% |
| Fuel and lights | 60% | 40% |
| Forage and grain | 100% | |
| Repairs to properties | 100% | |
| Depreciation | 100% | |
| Taxes | 100% | |
| Interest | | 100% |
| General expenses and supplies | (A) | (A) |

(A) Actual allocation based upon the nature of each item of expense included under this heading.

The method or formula of the petitioner provides for the application of the "first in, first out" rule authorized in article 22 (c)–2 of Regulations 86 for identifying goods in an inventory where they have become so intermingled as to lose their identity.

The parties have stipulated that if it should be determined that the petitioner is entitled to value its inventories of live stock upon the basis of cost and that the petitioner's method or formula for determin-

ing cost is correct, the amounts of $493,173.50 and $525,728.24 shall be accepted as correctly reflecting the values of the petitioner's inventories of live stock at the beginning and end of 1935, respectively.

Section 22 (c) of the Revenue Act of 1934 provides as follows:

(c) Inventories.—Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

Regulations 86, relating to the Revenue Act of 1934, provides in part as follows:

Art. 22 (c)–2. *Valuation of inventories.*—Section 22 (c) provides two tests to which each inventory must conform:

(1) It must conform as nearly as may be to the best accounting practice in the trade or business, and

(2) It must clearly reflect the income.

It follows, therefore, that inventory rules cannot be uniform but must give effect to trade customs which come within the scope of the best accounting practice in the particular trade or business. In order clearly to reflect income, the inventory practice of a taxpayer should be consistent from year to year, and greater weight is to be given to consistency than to any particular method of inventorying or basis of valuation so long as the method or basis used is substantially in accord with these regulations. An inventory that can be used under the best accounting practice in a balance sheet showing the financial position of the taxpayer can, as a general rule, be regarded as clearly reflecting his income.

The bases of valuation most commonly used by business concerns and which meet the requirements of section 22 (c) are (a) cost and (b) cost or market, whichever is lower. * * *

In respect of normal goods, whichever basis is adopted must be applied with reasonable consistency to the entire inventory. * * * Goods taken in the inventory which have been so intermingled that they can not be identified with specific invoices will be deemed to be the goods most recently purchased or produced, and the cost thereof will be the actual cost of the goods purchased or produced during the period in which the quantity of goods in the inventory has been acquired. * * *

The following methods, among others, are sometimes used in taking or valuing inventories, but are not in accord with these regulations, viz: * * *

(4) Using a constant price or nominal value for so-called normal quantity of materials or goods in stock.

*      *      *      *      *      *      *

Art. 22 (c)–3. *Inventories at cost.*—Cost means:

(1) In the case of merchandise on hand at the beginning of the taxable year, the inventory price of such goods.

(2) In the case of merchandise purchased since the beginning of the taxable year, the invoice price less trade or other discounts, except strictly cash discounts approximating a fair interest rate, which may be deducted or not at the option of the taxpayer, provided a consistent course is followed. To this net invoice price should be added transportation or other necessary charges incurred in acquiring possession of the goods.

(3) In the case of merchandise produced by the taxpayer since the beginning of the taxable year, (a) the cost of raw materials and supplies entering into or consumed in connection with the product, (b) expenditures for direct labor, (c) indirect expenses incident to and necessary for the production of the particular article, including in such indirect expenses a reasonable proportion of management expenses, but not including any cost of selling or return on capital, whether by way of interest or profit.

(4) In any industry in which the usual rules for computation of cost of production are inapplicable, costs may be approximated upon such basis as may be reasonable and in conformity with established trade practice in the particular industry. Among such cases are (a) farmers and raisers of live stock (see article 22 (c)-6), (b) miners and manufacturers who by a single process or uniform series of processes derive a product of two or more kinds, sizes, or grades, the unit cost of which is substantially alike (see article 22 (c)-7), and (c) retail merchants who use what is known as the "retail method" in ascertaining approximate cost (see article 22 (c)-8).

    \*        \*        \*        \*        \*        \*        \*

ART. 22 (c)-6. *Inventories of livestock raisers and other farmers.*—\* \* \*

Because of the difficulty of ascertaining actual cost of live stock and other farm products, farmers who render their returns upon an inventory basis *may value their inventories according to the "farm-price method,"* which provides for the valuation of inventories at market price less direct cost of disposition. If the use of the "farm-price method" of valuing inventories for any taxable year involves a change in method of valuing inventories from that employed in prior years, permission for such change shall first be secured from the Commissioner as provided in article 41-2. In such case the opening inventory for the taxable year in which the change is made should be brought in at the same value as the closing inventory for the preceding taxable year. If such valuation of the opening inventory for the taxable year in which the change is made results in an abnormally large income for that year, there may be submitted with the return for such taxable year an adjustment statement for the preceding year. This statement shall be based on the "farm-price method" of valuing inventories, upon the amount of which adjustments the tax, if any be due, shall be assessed and paid at the rate of tax in effect for such preceding year. If an adjustment for the preceding year is not, in the opinion of the Commissioner, sufficient clearly to reflect income, adjustment sheets for prior years may be accepted or required. [Emphasis supplied.]

In filing its return petitioner valued its inventories by the constant price method, which concededly is condemned by the respondent in his regulations and by decided cases, *Lucas v. Kansas City Structural Steel Co.*, 281 U. S. 264; *Reynolds Cattle Co.*, 31 B. T. A. 206. Rejecting the constant price method with respect to the main cattle herd and rejecting the contention of the petitioner that it should be permitted to value its entire inventory on the basis of cost, computed according to its formula, the respondent valued the live stock in the main cattle herd by the farm price method but accepted the petitioner's constant price method for valuing the live stock in the three other herds as used in filing its return. While not conceding error, the respondent offers no explanation of his action in employing such a hybrid method for making his valuation and points to nothing in

the record in support of its propriety. It is therefore apparent that consistency was not observed in making the respondent's valuations and that the use of such valuations does not tend to properly reflect income.

In the light of the foregoing situation the first question for decision is what basis or method should be used in valuing petitioner's live stock inventories at the beginning and end of 1935. Obviously the constant price method may not be used. Under the provisions of article 22 (c)–6 the use of the farm price method by a taxpayer is not compulsory but is only optional in case he desires to employ it. Here the petitioner does not desire to employ such method and we find nothing in the statute or the regulations which requires that the petitioner should accept its use because of the fact that in prior years, with the respondent's apparent approval, the petitioner had used a proscribed basis.

As stated in article 22 (c)–2, *supra*, the bases of valuation most commonly used by business concerns which meet the requirements of section 22 (c) of the act, *supra*, respecting conformity to the best accounting practice in the business or trade and the clear reflection of income are (a) cost and (b) cost or market, whichever is lower. From the evidence it appears that there is some diversity of method by which taxpayers engaged in the livestock business in the Southwest value their inventories. While it appears that a substantial number of operators use the farm price method, doubtless due to the fact that it is permitted by the regulations and relieves them of the keeping of cost records, and it further appears that the use of the cost basis is exceptional, probably due to the fact that in the case of the small operators the keeping of the necessary cost records would be unduly burdensome, we do not find anything in the law or regulations which makes that a bar to the use of that basis by those who desire to use it and who are in a position to keep the records necessary for the determination of cost. No contention is made by the respondent that the bookkeeping system of the petitioner does not contain adequate data from which to determine cost. Since the use of the constant price method of valuing inventories will not correctly reflect income and since the method of valuing inventories at cost is approved by the regulations as being one which will clearly reflect income, we find nothing in the statute or regulations which would prevent a taxpayer who has been using the constant price method from changing to the cost basis if he so desires. Cf. *Chicago Frog & Switch Co.* v. *United States*, 68 Ct. Cls. 186.

Being of the opinion that the petitioner is entitled to value its inventories on the basis of cost, the next question for determination is whether the use of the petitioner's formula will correctly reflect cost.

The respondent contends that the use of the petitioner's formula in computing cost of its livestock is objectionable for two reasons: (1) Because it apportions to animals born during the year the cost of maintaining the breeding animals, and (2) because it apportions death losses to surviving animals, that is it apportions the cost value, (a) of breeding animals dying during the year to the animals born during the year, (b) of growing animals dying during the year to the growing animals which survive the year, and (c) of saddle and work horses and mules dying during the year to breeding and growing animals.

Respecting the first objection of the Commissioner, it is to be observed that the petitioner's ranch is operated primarily for the production of calves. The breeding animals therefore are the instruments of production and the animals they produce are the products. The principle contended for by the respondent in his objection would require the maintenance expenses each year of an animal, after reaching the productive state, to be treated as part of its cost so long as it remained in the herd, which would mean until it was worn out or no longer useful as a breeding animal. Proper consideration of the purpose for which the ranch is operated leads, we think, to the conclusion that after a breeding animal reaches the productive state the cost of its maintenance should not be treated as part of and added to its cost, but should fall on the animal which it produces and be treated as a part of the cost of the animal so produced. In our opinion, after an animal reaches the productive state, expenditures for its maintenance bear a similar relationship to the animals it produces as the expenditures set forth in paragraph (3) of article 22 (c)–3, *supra*, bear to the merchandise there referred to as being produced. The expenditures there mentioned are regarded as constituting part of the cost of the merchandise so produced and we think that here expenditures for the maintenance of the breeding animals are likewise to be treated as a part of the cost of the animals produced.

The respondent's other objection to the use of the formula, because of the manner in which it apportions to surviving animals death losses occurring during the year, is sound. While the evidence shows that death losses are losses recurring year after year in substantial amounts, we fail to see why that fact makes them apportionable to surviving animals as a part of the cost of such animals. While it is true that the breeding animals are maintained as instruments of production and that the animals they produce are the products thereof, yet when a breeding animal dies its usefulness is terminated. The petitioner sustains its loss thereon at that time and under the statute such loss is deductible in the year in which

sustained. Relative to the manner in which such losses are to be deducted, Regulations 86 provides as follows:

ART. 23 (e)–5. *Losses of farmers.*—Losses incurred in the operation of farms as business enterprises are deductible from gross income. * * * A farmer engaged in raising and selling stock, such as cattle, sheep, horses, etc., is not entitled to claim as a loss the value of animals that perish from among those animals that were raised on the farm, except as such loss is reflected in an inventory if used. * * * If gross income is ascertained by inventories, no deduction can be made for live stock or products lost during the year, whether purchased for resale or produced on the farm, as such losses will be reflected in the inventory by reducing the amount of live stock or products on hand at the close of the year. * * *

The petitioner has not directed our attention to any authority and we know of none which warrants a holding that death losses from breeding animals in a given year are to be regarded as a part of the cost of the animals born in that year and as such are to be carried forward and used as an offset against income for a later year or years in which such animals are sold. The petitioner's apportionment of death losses on growing animals, saddle and work horses and mules is objectionable for the same reason.

In a recomputation of the petitioner's tax liability under Rule 50 the inventories will be valued at cost, computed by the petitioner's formula, but so modified as to eliminate from such cost all death losses.

While conceding that he has allowed as a deduction against ranch income the amount paid Ritchie as salary for his services, the respondent contends that Ritchie's bond was given to guarantee his good faith, honesty, and integrity in administering the estate and that the premium paid by the petitioner on such bond is as much an administration expense as are court costs, attorneys' fees, or executors' commissions which are not allowable deductions in determining income and that his action in disallowing a deduction from income of the amount of such premium therefore should be sustained. The petitioner concedes that the bond was a fidelity bond but contends that the premium thereon is just as much a business expense as insurance premiums against fire, storm, theft, accident, or other similar losses, which are expressly classed as business expenses in the respondent's regulations.

Since the will directed that all properties of the decedent be disposed of as soon as possible after her death but only at prices deemed satisfactory to the executors, and since the ranch was still held and operated in 1935 under the terms of the will, no sale thereof having been made, and since Ritchie was appointed administrator in that year, it appears that administration of the estate had not been fully completed even after the lapse of 14 years. So far as the record shows, nothing was being done during 1935 to prepare the estate for

settlement and distribution. Such activities as are disclosed for that year, with the possible exception of the appointment of Ritchie as administrator, indicate that nothing was done except carry on the business. This being the situation, we think the following statements made in *George W. Oldham et al., Executors,* 36 B. T. A. 523, 529, are applicable:

* * * Where, however, such fees or commissions [of executors, administrators, attorneys, and other representatives of estates] are paid for services rendered exclusively in carrying on the affairs of the estate as a business, rather than in preparing it for settlement and distribution, such payments constitute ordinary and necessary expenses and may be deducted for income tax purposes. *Grace M. Knox et al., Executors,* 3 B. T. A. 143; *William W. Mead et al., Executors, supra; George W. Seligman, Executor,* 10 B. T. A. 840; *Henrietta Bendheim,* 8 B. T. A. 158; *Charles Lesley Ames, Executor,* 14 B. T. A. 1067; *Margaret B. Sparrow,* 18 B. T. A. 1; *Florence Grandin,* 16 B. T. A. 515; *Estate of William G. Peckham,* 19 B. T. A. 1020, 1023; *Chicago Title & Trust Co. et al., Trustees,* 18 B. T. A. 395; *H. Alfred Hansen, Executor,* 6 B. T. A. 860. * * *

* * * On the other hand, in cases where, according to the provisions of the will or testamentary trust, it is necessary to continue the estate intact over a period of years, and to carry on its affairs as a business in the interim, the fees and commissions paid to representatives of the estate for such services constitute expenses, deductible for income tax purposes. *William W. Mead et al., Executors, supra; H. Alfred Hansen, Executor, supra; Florence Grandin, supra;* * * *

The respondent having allowed as a deduction from income the salary paid Ritchie in 1935 as administrator, we fail to see why the premium paid for his bond, the furnishing of which was a prerequisite to his acting as administrator, is not also allowable. Both the salary and the bond premium were incurred primarily in connection with the conduct of the petitioner's business. We accordingly hold that the bond premium constitutes an allowable deduction for income tax purposes.

*Decision will be entered under Rule 50.*