Charley W. Peterson v. Commissioner.
Charley W. Peterson v. Commissioner
Docket No. 3411.
United States Tax Court
1945 Tax Ct. Memo LEXIS 253; 4 T.C.M. (CCH) 346; T.C.M. (RIA) 45108; March 30, 1945
Francis D. Lee, Esq., for the petitioner. Loyal E. Keir, Esq., and Harlow King. Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent has determined deficiencies in the petitioner's income tax for the years 1940 and 1941 in the respective amounts of $6,690.96 and $14,525.02. The only issue presented is the correctness of the respondent's determination of the value of the petitioner's closing inventory of cattle for each of the years. Findings of Fact The petitioner is a resident of Atkinson, Holt County, Nebraska, and filed his 1940 and 1941 income tax returns on the accrual basis, with the Collector at Omaha. The petitioner is engaged in the ranching business, which has been his life's work. His operations are principally *254 in Holt County, in north central Nebraska, which is generally referred to as the sandhill section. He has approximately 75,000 acres of land, and maintains about 4,000 head of cattle. In 1939 the petitioner was engaged principally in raising and selling steers. However, in 1940 and 1941, he began building up his breeding herd and sold steers, heifers and feeders. Sometime during the summer of 1941 he purchased, at some undisclosed price or prices, 1,000 head of one-year-old heifers. Sometime during 1941, and at an undisclosed price, he purchased 170 head of three-year-old cows. The petitioner's closing inventory at December 31, 1939, was determined as a result of a settlement with the Bureau of Internal Revenue of his income taxes for the years 1927 through 1939, and no question is presented as to the correctness of the amount of his opening inventory for 1940. The petitioner kept no books or records reflecting purchases or sales of cattle and determined the value of his closing inventories of cattle for 1940 and 1941 on the basis of what he thought banks would loan him on them. His opinion was that banks would loan him an average of about $20 per head on his cattle, and $25 per *255 head in the case of those which had received extra feed, and that such amounts were about 50 percent of the value of the cattle. By doubling those amounts, he arrived at the values he reported as his closing cattle inventories for 1940 and 1941. In determining the deficiencies in controversy, the respondent determined the value of the petitioner's closing inventories for 1940 and 1941 by determining an average value for each class of petitioner's cattle. In doing this, the respondent made determinations as to the average weight per head of each class and the average selling price per hundredweight of each class at the Omaha terminal market, and allowed $1 per hundredweight off of such average selling price as representing the cost of getting petitioner's cattle to the Omaha market. The petitioner reported his closing inventory for 1940 at $159,066, which included the value of his cattle as well as other items not here involved. The respondent determined that the value of the cattle was understated, and increased it to $158,978.38, which, with the value of $13,871 for other items not here involved, gave a total closing inventory value of $172,849.38 for 1940. The petitioner reported *256 his closing inventory for 1941 at $258,360. This included the value of his cattle as well as other items not involved herein. The respondent determined that the value of the cattle was understated, and increased it to $223,168.50, which, with the value of $75,110 for other items not here involved, gave a total closing inventory value of $298,278.50 for 1941. The petitioner's closing inventory of cattle on the indicated dates consisted of the following classes and numbers: December
December
31, 1940
31, 1941
Cows
573
1,017
1 Year Steers
382
1,212
1 Year Heifers
283
1,014
Steer Calves
773
500
Heifer Calves
322
280
2 Year Steers
108
3 Year Steers
739
Bulls
31
85
Total
3,103
4,216
The petitioner was not engaged in the business of feeding cattle. His herd was only range cattle, which in the winter season were at about their lightest weight. The following is a statement of the average weight per animal of each class of petitioner's herd on December 31, 1940, and on December 31, 1941, and the average value at the market per hundredweight for each class, except cows and bulls: Average Weight
Average Value at the
per Animal
Market per Cwt.
Dec. 31, 1940
Dec. 31, 1941
Dec. 31, 1940
Dec. 31, 1941
Cows
800 lbs.
800 lbs.
1 Year Steers
550 lbs.
550 lbs.
$9.00
$10.50
1 Year Heifers
550 lbs.
550 lbs.
8.00
9.50
Steer Calves
300 lbs.
300 lbs.
9.50
10.32 1/2
Heifer Calves
300 lbs.
300 lbs.
8.50
9.32 1/2
2 Year Steers
800 1bs.
10.00
3 Year Steers
1,000 lbs.
8.50
Bulls
1,000 lbs.
1,000 lbs.
*257 The cost of moving petitioner's cattle from his ranch or farm to a terminal market would have been $1 per hundredweight on December 31, 1940, and December 31, 1941. On the basis of the above-stated weights and values and a cost of $1 per hundredweight for marketing the average value per head of the indicated classes of petitioner's cattle for inventory purposes was as follows on the indicated dates: December
December
31, 1940
31, 1941
1 Year Steers
$44.00
$52.25
1 Year Heifers
38.50
46.75
Steer Calves
25.50
27.98
Heifer Calves
22.50
24.98
2 Year Steers
72.00
3 Year Steers
75.00
The average value per hundredweight of the petitioner's cows and bulls, if disposed of on a terminal market for beef purposes, was as follows: December
December
31, 1940
31, 1941
Cows
$5.00
$6.25
Bulls
5.50 8.37 1/2
On the basis of such values, the above-stated weights, and $1 per hundredweight for cost of marketing, their value for beef purposes was as follows: December
December
31,1940
31,1941
Cows
$32.00
$42.00
Bulls
45.00
73.75
The petitioner's cows and bulls were maintained by him for breeding *258 purposes. There is a market for breeding cows at all times of the year, and cows sold on the range to farmers and ranchers for breeding purposes bring higher prices than if sold on the terminal market for beef purposes. Opinion In determining the value of the petitioner's cattle inventories on December 31, 1940, and December 31, 1941, the respondent has employed what is designated the farm-price method, which provides for the valuation of livestock inventories at market price less the cost of marketing. Regulations 103, section 19.22(c)-6 (2)(b). He contends that his determination in all respects should be sustained. At the hearing and on his original brief, the petitioner took the position that the farm-price method was applicable in determining the value of his cattle inventories on the pertinent dates, but that the respondent had erred in determining greater weights and higher values per hundred-weight for the cattle than their condition and the terminal market prices warranted. The parties are in agreement that the cost of marketing was $1 per hundredweight. The use of the farm-price method of valuing livestock inventories is optional with the taxpayer. Estate of Cornelia Adair, 43 B.T.A. 384. *259 In view of this, the position taken by the parties, and the fact that the proceeding was tried on the theory that the farm-price method was the applicable one here, our findings of fact and opinion are accordingly based on that method. From a consideration of the evidence submitted respecting the weight and condition of the petitioner's cattle and the selling price of cattle of similar classes on the terminal market at Omaha, we have made findings of fact as to the value, for inventory purposes, per head of each class of petitioner's cattle, except cows and bulls. In making such findings, the contention of petitioner that a reduction of ten cents per hundredweight should be made as a "cut-back" because of the inferior grade of the meat of the animals has been denied because of lack of evidence to show inferiority. The respondent determined that the value of the petitioner's cows on December 31, 1940, was $43.88 per head, and on December 31, 1941, was $54. He determined that the value of the bulls per head on the respective dates was $57 and $88.50. We have found that for sale for beef purposes the value of the cows per head was $32 on December 31, 1940, and $42 on December 31, 1941, and *260 that the value of the bulls per head was $45 and $73.75 on the respective dates. The petitioner takes the position that the cows and bulls should be included in inventory at the prices they would have brought for beef on the Omaha market, less the cost of marketing, which, as shown by our findings, would indicate values substantially lower than the values determined by the respondent. The cows and bulls were owned and held for breeding purposes, and not for sale as beef, and it is reasonable to assume, we think, that their values as of a given date are to some extent based on factors other than their condition for sale as beef on that date. In fact, the evidence shows that cows sold on a farm or ranch to farmers or ranchmen, for breeding purposes, bring higher prices than if sold on the terminal market for beef purpose. None of the witnesses testified as to the amount by which the selling price of breeding cattle normally exceeds the selling price of beef cattle, and we have no proof from which to determine that the price at which petitioner's cows and bulls would have sold on the inventory dates would have been less than the values determined by the respondent. Such being the state *261 of the record, the respondent's determination is accordingly approved. In his reply brief, the petitioner refers to T.D. 5423, approved December 15, 1944, which was subsequent to the trial of this proceeding but before the filing of petitioner's original brief. That T.D. amends section 29.22(c)-6 of Regulations 111, and authorizes the use by taxpayers of a "unit-livestock-price method". The petitioner contends that he was using this method during 1940 and 1941, and is entitled to have it applied in the instant proceeding. As stated in T.D. 5423, this method provides, among other things, for the valuation of the different classes of animals in the inventory at a standard unit price for each animal within a class; that the unit prices assigned to the several classes must reasonably account for the normal costs incurred in producing the animals within such classes; that a taxpayer electing to use such method must apply it to all livestock raised, whether for sale or for breeding, draft or dairy purposes; that once established, the unit prices and classifications selected by the taxpayer must be consistently applied to all subsequent years in the valuation *262 of livestock inventories; that no changes in classifications or unit prices can be made without the Commissioner's approval; and that livestock purchased must be included in the inventory at cost, except that animals purchased for breeding, dairy or draft purposes can, at the option of the taxpayer, either be included in inventory or be treated as capital assets, subject to depreciation after maturity. Where animals are not mature at the time of purchase, their cost is to be increased at the end of each taxable year in accordance with the established unit prices, but no increase is to be made during the taxable year of purchase if the animals are acquired during the last six months of the year. In event of the sale or loss of an animal purchased, its cost will be eliminated from the closing inventory if the taxpayer's records permit identification of the animal; otherwise the first in, first out method of valuing inventories must be applied. Without in anywise passing on the validity of the "unit-livestock-price method" for determining livestock inventories, we think the contention of the petitioner as to its applicability in this proceeding cannot be sustained. So far as the record *263 shows, the bank-loan method employed by the petitioner in valuing and reporting his cattle inventories bore no relationship to their cost of production or to the purchase price in case of animals purchased. So far as disclosed, the method employed by petitioner was related to market or selling prices, and not to cost prices. Furthermore, as to the one-year-old heifers purchased sometime during the summer of 1941, and still retained at December 31, 1941, the record is silent as to whether the method employed by petitioner effected an increase in unit prices. If it did, then to the extent that it did with respect to animals purchased during the last six months of the year, it ran counter to the "unit-livestock-price method". In view of the state of the record, we hold against the petitioner as to this contention. The amount of the petitioner's cattle inventory at December 31, 1940, as recomputed under our findings of fact and holdings herein, will be used as his opening inventory for 1941. Decision will be entered under Rule 50.