APPEAL OF H. ALFRED HANSEN, EXECUTOR, ESTATE OF HANS C. HANSEN.

Docket No. 6744.    Promulgated April 15, 1927.

Amounts paid to the executor of and the attorneys for the estate of the decedent during the fiscal year ended January 31, 1923, under the circumstances set forth herein, are deductible in computing the net income of the estate for that year.

*Robert H. Montgomery, Esq.*, for the petitioner.
*M. N. Fisher, Esq.*, for the Commissioner.

This appeal is from the determination of a deficiency in income tax for the fiscal year ended January 31, 1923, in the amount of $22,849.26.

### FINDINGS OF FACT.

Hans C. Hansen died testate on January 24, 1916. His last will and testament was admitted to probate and record in the Probate Court in and for Middlesex County, Massachusetts, on February 14, 1916. On the same date Henry Alfred Hansen, son of Hans C. Hansen, who was named in the will as the executor thereof, duly qualified as executor and has continued as such executor to the present time. The last will and testament of Hans C. Hansen, was in part as follows:

3. I desire my son, Henry Alfred Hansen, to have the sole management and control of my estate, both real and personal, and especially I desire him to have the management, charge and control of the Printers Supply business heretofore carried on by me for so many years, under the name of The H. C. Hansen Type Foundry, including the plant, machinery, fixtures, utensils, stock in trade, book debts, good-will, and effects of every nature and description connected therewith, with full power and control in every particular. I hereby give him full authority to continue said business as at present organized, for a period not exceeding eight (8) years, with the privilege of selling or closing it up at any subsequent time, and I hereby give my said son authority, should he deem it wise and expedient so to do, to, at any time within the said eight years, have a corporation organized for the purpose of purchasing, taking over and conducting the business; in such case, if shares of stock in said corporation are taken in payment for said business, said stock is to be a part of my said estate, and disposed of as herein provided, and the eight year limit herein specified for closing up said business does not apply to said corporation.

4. I desire that when my estate is settled, as herein provided for, and the Printers Supply business is sold, either to individuals or a corporation or to a corporation to be organized for the special purpose of continuing said business, or in any other way, that there be paid to my said son, Henry Alfred Hansen, ten per cent of the net proceeds of the sale of said business, as compensation and reward for his many years of faithful past services to me, and to the business, said ten per cent to be paid to him in money, or at his option, in shares of stock, of equal value, in said corporation should such be organized.

5. Of the rest and residue of my estate, both real and personal, and whatever I may be entitled to at the time of my decease, after the provisions heretofore specified in Sections 1, 2, and 4 of this will, I give one-third to my son, Henry Alfred Hansen, to his own use and behoof forever.

6. The remaining two-thirds I give to my son, Henry Alfred Hansen, but IN TRUST NEVERTHELESS for the following uses and purposes, namely: to hold, manage, control, invest and re-invest the same for the use and benefit of my two children, Luther A. Hansen and Christine Hansen Curtis, in manner and way following: * * *

Henry Alfred Hansen continued the operation of the H. C. Hansen Type Foundry from the date of his father's death to May 1, 1922. During that time there was a continuous course of purchase, manufacture, and sale of merchandise, and on May 1, 1922, the inventory of the business consisted almost entirely of goods purchased or manufactured since January 24, 1916. On January 24, 1916, the book value of the plant assets of the business was about $230,000, and the book value of the inventory about $125,000.

On or about May 1, 1922, Henry Alfred Hansen sold the plant assets of the H. C. Hansen Type Foundry for $250,000, and also sold the inventory of the business in bulk for $277,312.50. Later in the year 1922, after collection had been made of the amount for which the plant assets and inventory had been sold, Henry Alfred Hansen, with the approval and consent of the other persons interested in the estate, paid to himself $27,713.25, as a commission for his services in bringing about the sale of the inventory and to reimburse himself for expenses incurred in making the sale. He also paid to certain attorneys $10,000 for legal services rendered by them to the estate in connection with the sale of the plant assets and inventory.

The amount of $27,713.25, so paid to Henry Alfred Hansen was in addition to the 10 per cent of the total sales price of the business which was paid to him under the fourth item of the last will and testament of Hans C. Hansen. The payment of the amounts of $27,713.25 and $10,000 in question have not yet been approved by the Probate Court in and for Middlesex County, Massachusetts, to which Henry Alfred Hansen must account as executor of the estate of Hans C. Hansen.

The services rendered by Henry Alfred Hansen in connection with the sale of the inventory extended over several years and

involved trips to different cities and conferences and negotiations with various persons interested in purchasing the inventory. Henry Alfred Hansen and attorneys for the estate have from time to time been allowed and paid compensation for the other services rendered by them to the estate of Hans C. Hansen.

In the income-tax return of the estate of Hans C. Hansen for the fiscal year ended January 31, 1923, Henry Alfred Hansen, as executor of the estate, deducted from gross income the amounts of $27,713.25 and $10,000 paid to himself and the attorneys for the estate, respectively, as hereinabove set forth. The Commissioner disallowed the deductions.

OPINION.

MARQUETTE: The only question herein is whether or not the estate of Hans C. Hansen, in computing its net income for the fiscal year ended January 31, 1923, is entitled to deduct the amounts of $27,713.25 and $10,000, paid to the executor and attorneys for the estate, respectively, under the circumstances set forth in the findings of fact. The Commissioner contends that the services rendered by the executor were those expressly required of him by the last will and testament of Hans C. Hansen, and that the amounts paid for such services are a part of the usual expense of administration and are not deductible from gross income. The petitioner contends that under the circumstances they are deductible, even though they are administrative expenses, but urges that they are in fact ordinary and necessary expenses of carrying on a trade or business.

This appeal is in many respects strikingly similar to the *Appeal of Grace M. Knox et al., Executors*, 3 B. T. A. 143. The facts in that appeal were that S. H. Knox died testate in May, 1915. In his will he named certain persons who acted as executors in the necessary proceedings for the settlement and distribution of his estate, and provided further that the same executors should become trustees of certain trusts specifically provided for and set forth in the will. The decedent knowing that the estate would continue and produce a large income annually and that the execution of the trusts provided for would extend over a period of years much longer than the period ordinarily required for the administration and settlement of an estate, provided in his will that his executors and trustees should during the period of their services in such capacity, receive as compensation a fixed annual salary in lieu of statutory fees and commissions. The trusts provided by the will were not created until the year 1921. During the year 1919 the estate of S. H. Knox had a large income, from which the executors in the income-tax return of the estate sought to deduct their compensation for that year. The Commis-

sioner disallowed the deduction. This Board, in holding that the compensation was deductible, said:

There appears to be no provision in the statutes of the State of New York, or in the Federal tax laws, which can be urged as in any way preventing or defeating the carrying out of the testator's purpose set forth in his will. This is not a case of a will or of an estate which is to be administered, settled, and distributed within the short time ordinarily required for such purposes. On the other hand, it is a case of the creation of long-time trusts, the execution of which must extend over such a period of years as to constitute a continuing business of handling large trust properties, collecting and receiving large incomes, and disposing of the same in accordance with the terms of the trusts. In such a case it appears to be eminently wise and proper that the executors' and trustees' compensation should be determined on the basis of annual salaries, and that such salaries should be paid out of the income of the estate and trust properties.

Section 219 of the Revenue Act of 1918 laid upon the executor and trustees in this case the duty of making an income-tax return for the estate and properties under their charge, and it further provided that the gross and net income of such estate should be ascertained and computed in substantially the same manner as required of living persons. The executors and trustees are essentially employees of the estate. Their compensation is one of the ordinary and necessary expenses of the estate and properly deductible from the income thereof without regard to the fact that a portion of the estate's income is exempt from taxation.

See also *William W. Mead et al., Executors, v. Commissioner*, 6 B. T. A. 752.

This is not the case of a will or an estate which is to be administered or distributed within the time usually required for such purpose. On the contrary the decedent's will contemplated that the estate might be kept intact for at least eight years and that during that time the type foundry business would be conducted in the same manner as it had been during his lifetime. The business was in fact so conducted for more than six years and the estate, after a period of more than ten years from the date of Hans C. Hansen's death, is still undistributed. The executor managed and conducted the business and engaged in a continuous course of purchase, manufacture and sale, and the inventory which was sold in 1922 consisted almost entirely of merchandise which had been acquired subsequent to the death of Hans C. Hansen. A large profit was realized on the sale, and this profit which accrued to the estate was the direct result of the executor's activities. Since the income which is sought to be taxed herein was to a large extent realized from the sale by the executor of the inventory belonging to the type foundry business, we see no reason why the compensation paid to him and the attorneys for making such sale should not be taken into consideration in determining the profit therefrom. We are therefore of the opinion that under the circumstances herein, the amounts paid to the executor and the attorneys for the estate of Hans C. Hansen are not the ordi-

nary expenses of administration, but that they are properly deductible in computing the net income of the estate for the fiscal year ended January 31, 1923. We attach no importance to the fact that the amount in question paid to the executor is in addition to the 10 per cent of the proceeds of the sale of the plant and inventory allowed him by the will of Hans C. Hansen. That is clearly a bequest as "compensation and reward for his many years of past, faithful services," and was not intended as compensation for any services he might render the estate.

> *Judgment will be entered for the petitioner on 15 days' notice, under Rule 50.*