HENRIETTA BENDHEIM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JULIUS BENDHEIM, EXECUTOR, ESTATE OF A. M. BENDHEIM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7963, 7964.   Promulgated September 22, 1927.

1. A trustee's commissions which are attributable solely to receipt and disbursement of income are deductible from the gross income of the trust.

2. Neither capital losses incurred by a trust nor depreciation on capital assets of the trust may be deducted by a beneficiary of the trust from her gross income.

3. A life tenant is not taxable on gain made in a sale of the fee simple.

*John W. Townsend, Esq., James Craig Peacock, Esq.*, and *C. E. Koss, Esq.*, for the petitioners.

*J. Arthur Adams, Esq.*, for the respondent.

These proceedings involve deficiencies in income tax and were, by motion made and granted, consolidated.

The deficiencies in the case of Henrietta Bendheim are for the calendar year 1920, $10,934.65, and for the calendar year 1921, $17,277.45. The deficiency for the year 1920 results from respondent's determination that petitioner's taxable income from a trust was greater than that which she had reported. This excess resulted from the respondent's refusal to permit the deduction from gross income of commissions paid to the trustees to the extent of $11,034.50; from his refusal to permit the deduction of depreciation suffered by the corpus of the trust; from his refusal to permit petitioner to deduct losses incurred in the sale of trust property; and, by his holding that certain sales made by the trust were not made on an installment basis. The deficiency for the year 1921, results from the inclusion in petitioner's gross income of the gain made in that year from the sale of a certain parcel of real estate in which petitioner had only a life estate.

In the case of the estate of A. M. Bendheim, the deficiency is for the calendar year 1919 and is in the amount of $1,369.92. Petitioner, in this case, contends that respondent erred (a) in determining that the basis for computing gain arising from certain sales was the value at which the property was appraised at the death of the decedent; (b) in computing the gain or loss on certain property sold by the estate; (c) in determining that losses should be reduced and gains increased by the amount of depreciation sustained; and (d) in not allowing as a deduction in computing net income, the sum of $4,000 paid in 1919 to the executors as commissions for receiving and disbursing the income of the estate. Contentions (a) and (b) were withdrawn at the hearing, and contention (c) was withdrawn in the brief filed on petitioner's behalf.

### FINDINGS OF FACT.

A. M. Bendheim died a resident of and domiciled in the State of New York, on January 19, 1914, having first made and published his last will and testament, the material parts of which read:

THIRD:—I give and bequeath unto my beloved wife the sum of Ten Thousand Dollars ($10,000); I also devise to my wife for life any real property owned by me which may be used by me as a residence at the time of my decease.

SIXTH:—All the rest, residue and remainder of my property, real and personal, wherever situate, I devise and bequeath to my Executors hereinafter named, in trust nevertheless for the uses and purposes following, that is to say:

1.—To collect the rents, issues, income and profits thereof and apply the same to the use of my wife during her life.

2.—Upon her death to divide said residuary estate into four (4) equal parts, which I dispose of as follows:

A.—I give, devise and bequeath unto my son JULIUS one of said parts, and in the event of his then being deceased, to his issue him surviving *per stirpes*, and in default of issue to his sisters and brother and the issue of any deceased sister and brother *per stirpes*.

B.—I give, devise and bequeath one of said parts to my son EDWIN, and in the event of his being then deceased, to his issue him surviving *per stirpes*, and in default of issue, to his sisters and brother and the issue of any deceased sister and brother *per stirpes*.

C.—I give, devise and bequeath one of said parts to my sons JULIUS and EDWIN and my daughter JENNIE, in trust nevertheless, to collect the rents, issues, income and profits thereof and apply the same to the use of my daughter GERTRUDE for life, and upon her death, to pay over the same in such manner as she may direct by her Last Will and Testament, and if she die intestate, then to pay over the same to her issue *per stirpes;* and in default of issue, to her brothers and sister and the issue of any of them who may be deceased, *per stirpes*.

D.—I give, devise and bequeath one of said parts to my sons JULIUS and EDWIN and my daughter GERTRUDE, in trust nevertheless, to collect the rents, issues, income and profits thereof and apply the same to the use of my daughter JENNIE for life, and upon her death, to pay over the same in such manner as she may direct by her Last Will and Testament, and if she die intestate, then to pay over the same to her issue *per stirpes;* and in default of issue, to her brothers and sister and the issue of any of them who may be deceased, *per stirpes*.

SEVENTH :—I hereby nominate, constitute and appoint my wife HENRIETTA and my sons JULIUS and EDWIN Executors hereof. In the event of the death of either of my sons during the lifetime of my wife, I appoint in the place and stead of the one so dying, my daughters GERTRUDE and JENNIE as Executrices ; and it is my wish that both of them shall qualify, and if not then of the age of twenty-one years, that they shall qualify when they attain such age.

EIGHTH :—I authorize and empower my Executors to sell my property, real and personal, at public or private sale, and upon such terms as they may deem proper, and to mortgage and lease my property ; to construct buildings upon any vacant land which I may own, and to alter and modify existing buildings which I may own or be possessed of, I also authorize and empower my Executors and Trustees herein appointed, to invest any trust funds coming into their hands pursuant to the provisions hereof, in bond secured by first mortgage, on improved real property located in the City of New York, as such City may be constituted at the time of my decease, such mortgage not to exceed seventy per cent (70%) of the value of such property, as it may be appraised by them ; to invest in all securities in which savings banks may be permitted to invest their funds pursuant to law ; or in bonds secured by mortgages of railroads operated in the United States, which railroads shall have paid dividends on their common stock for at least five (5) consecutive years prior to investment therein ; or in bonds secured by mortgage of industrial corporations doing business in the United States, which shall have paid dividends on their common stock for at least ten (10) consecutive years prior to investment therein, providing such common stock shall have been listed on the New York Stock Exchange for at least ten consecutive years prior to such investment. But it is my wish and I direct that not more than twenty percent (20%) of any funds held in trust for either of my daughters shall be invested in any one bond

or mortgage, and not more than ten per cent (10%) of such trust funds in the bonds issued by any one corporation.

The will was admitted to probate on February 10, 1914, and on the same day letters testamentary were issued to Edwin Bendheim, Julius Bendheim and Henrietta Bendheim.

From the death of testator to March 31, 1921, the executors and trustees received and disbursed income arising from the estate in the following amounts:

| Period | Amount of income received | Net disbursements | Deduct commissions paid | Basis for commissions on disbursements |
|---|---|---|---|---|
| Prior to— | | | | |
| 1918 | $489,701.60 | $375,653.13 | None. | $375,653.13 |
| 1919 | 99,902.79 | 55,740.91 | $4,000.00 | 51,740.91 |
| 1920 | 114,318.51 | 45,183.57 | 12,571.00 | 32,612.57 |
| Jan. 1 to March 31, 1921 | 41,355.89 | 13,956.04 | None. | 13,956.04 |
| Total | 745,278.79 | 490,533.65 | 16,571.00 | 473,962.65 |

In the year 1919, Julius Bendheim and Edwin Bendheim paid to themselves out of the income of the estate, as commissions on income received and disbursed, the sum of $4,000, and in the year 1920 the same persons paid to themselves as commissions on income received and disbursed, the sum of $12,571. In 1921, the executors and trustees filed their intermediate account of settlement in the Surrogate's Court for the County of New York. This account was approved by the court in 1922. The court allowed the executors the following commissions for receiving principal:

Julius Bendheim _____ $4,044.21
Henrietta Bendheim _____ 4,044.21
Estate of Edwin Bendheim _____ 4,044.21

                                               12,132.63

The executors were allowed the following commissions for paying out principal:

Julius Bendheim _____ $2,392.81
Henrietta Bendheim _____ 2,392.81
Estate of Edwin Bendheim _____ 2,392.81

                                               7,178.43

The same persons, as trustees, were allowed the following commissions for receiving principal:

Julius Bendheim _____ $1,893.44
Henrietta Bendheim _____ 1,893.44
Estate of Edwin Bendheim _____ 1,893.44

                                               5,680.32

The same persons, as trustees, were allowed the following commissions for paying out principal:

| | |
|---|---:|
| Julius Bendheim | $977. 64 |
| Henrietta Bendheim | 977. 64 |
| Estate of Edwin Bendheim | 977. 64 |
| | 2, 932. 92 |

With respect to the trustees' commissions for receiving and paying out income, the order of the surrogate's court, reads:

Each Trustee is entitled to one-half commissions for receiving:

| | | |
|---|---:|---:|
| The amount of income as per Schedule H | | $745, 278. 79 |
| 1% on $745,278.79= | $7, 452. 78 | |
| 7,452.78÷2= | 3, 726. 39 | |

and to one-half commissions for paying out the following:

| | | |
|---|---:|---:|
| The amount as per Schedule I | | 378, 312. 12 |
| The amount as per Schedule J | $112, 221. 53 | |
| Less amount paid to Trustees on account of commissions on income as per Schedule I | 16, 571. 00 | |
| | | 95, 650. 53 |
| | | $473, 962. 65 |
| 1% on $473,962.65= | $4, 739. 62 | |
| $4,739.62÷2= | 2, 369. 81 | |

Edwin Bendheim and Julius Bendheim, however, at various times during the period covered by the present account, have each taken on account of their commissions on income, the sum of $8,285.50, said payments appearing in Schedule J of the account. There has been heretofore filed herein the duly acknowledged consent of Henrietta Bendheim the life beneficiary consenting to and approving the account as filed.

Therefore, commissions for receiving and paying out income should be fixed and allowed to the Trustees as follows:

| | |
|---|---:|
| To Henrietta Bendheim | $6, 096. 20 |
| " Julius Bendheim | 8, 285. 50 |
| " Edwin Bendheim | 8, 285. 50 |

Petitioner Henrietta Bendheim sought to deduct from her gross income for 1920, the $12,571 which the trustees paid to themselves in that year. Respondent disallowed this deduction to the extent of $11,034.50 and allowed it to the extent of $1,536.50, which amount he determined to be applicable to the income received and disbursed in 1920.

The books of account of both the trustees and of Henrietta Bendheim were kept on a cash receipts and disbursements basis.

The capital tangible assets of the estate in 1920, suffered depreciation in the amount of $10,890.

In 1920, the trustees sold certain bonds at a loss of $34,890, and during the same year, sold certain real estate on which they made a

gain of $16,666.67. The net loss to the estate on all sales for the year 1920, was $18,223.33.

In 1921, the property at Deal Beach, N. J., which was the residence of the testator and in which a life estate was devised by the third clause of his will to his wife Henrietta, was sold at a profit of $11,413.19. The proceeds of this sale were paid to the trustees and were reported by them to the surrogate's court, as part of the corpus of the trust.

### OPINION.

MILLIKEN: The trustees, including the widow, Henrietta Bendheim, treated the trust estate as the individual property of the beneficiary. They charged her with depreciation and capital losses, and credited her with capital gains. Her income-tax return for 1920 was a reflection of this accounting; so also was the return of the trustees. Apparently the only exception to this procedure was that the trustees reported the gain arising from the sale of the residence at Deal Branch, N. J., and the beneficiary did not report it. This gain respondent shifted to the life tenant. It becomes our duty therefore, to unravel this tangled skein insofar as the pleadings raise questions relative thereto, and to that extent point out the adjustments which should be made.

Under the will of her husband, Henrietta Bendheim was entitled to receive the net income of the estate after the payment of all legal charges of the trust which related to its production. The first question is whether the commissions paid to the trustees for the receipt and disbursement of income are proper deductions by the trustees, with the result that the beneficiary would receive just that much less taxable income, and if deductible, how much of the payments made in 1920 should be allowed as a deduction in that year.

Section 2753, New York Code of Civil Procedure, in part provides:

SEC. 2753 : Commissions of executor, administrator, guardian or testamentary trustee.

On the settlement of the account of any executor, administrator, guardian or testamentary trustee, the surrogate must allow to him his just, reasonable and necessary expenses actually paid by him, and if he be an attorney and counselor-at-law of this state, and shall have rendered legal services in connection with his official duties, such compensation for such legal services as shall appear to the surrogate to be just and reasonable ; and in addition thereto the surrogate must allow to such executor, administrator, guardian or testamentary trustee for his services in such official capacity, and if there be more than one, apportion among them according to the services rendered by them respectively ;

For receiving and paying out all sums of money not exceeding one thousand dollars, at the rate of five per centum.

For receiving and paying out any additional sums not amounting to more than ten thousand dollars, at the rate of two and one-half per centum.

For all sums above eleven thousand dollars, at the rate of one per centum.

The value of any real of personal property, to be determined in such manner as the surrogate may direct, and the increment thereof, received, distributed or delivered, shall be considered as money in making computation of commissions. But this shall not apply in the case of a specific legacy or devise.

If an executor acting as trustee, or if a trustee or guardian, is required to receive income and pay over the same, and such executor, trustee or guardian pays over said income and renders an annual account to the beneficiary of all his receipts and disbursemnts on account thereof, he shall be allowed, and may retain, the same commission on the amount so accounted for as he would be allowed upon principal on a judicial settlement; if he does not render such annual account, he shall be allowed, upon his judicial settlement, his commission upon the total income from any money or property then payable to such beneficiary.

If the gross value of the principal of the estate or fund accounted for amounts to one hundred thousand dollars or more, each executor, administrator, guardian or testamentary trustee is entitled to the full compensation on principal and income allowed herein to a sole executor, administrator, guardian or testamentary trustee, unless there are more than three, in which case the compensation to which three would be entitled must be apportioned among them according to the services rendered by them, respectively.

Under the above statute and in accord with the settlement made in the surrogate's court, it is clear that the $16,571 paid to Julius Bendheim and Edwin Bendheim represented commissions paid solely on income received and paid out. These commissions were a charge on income. See *In re Smith*, 149 N. Y. S. 131. It was not necessary that the trustees report annually to the surrogate's court. It was sufficient that they accounted annually with the beneficiary. See *In re Martin*, 196 N. Y. 415; 90 N. E. 46. In an estate like this, where the income was derived from the management, renting and selling of property, the commissions for receiving and paying out such income are in the nature of ordinary and necessary expenses paid in carrying on a trade or business and do not differ in nature from commissions paid to an agent for the management of the property of his principal. They are, therefore, deductible under section 214(a)(1) of the Revenue Act of 1918. Cf. *William W. Mead, et al., Executors*, v. *Commissioner*, 6 B. T. A. 752.

The next question is whether the whole of this $12,571 paid in 1920 to Julius and Edwin is deductible in that year from the gross income of the estate, or only a part thereof, and, if only a part, how much. Such deduction will result in a corresponding diminution of the taxable income of Henrietta.

The surrogate's court allowed, in 1922, this amount as compensation for the collection and disbursement of income. So much of this amount as was allowed for services rendered after 1920, can not be held to have been paid for ordinary and necessary business expenses for that year. Such excess had not been earned in 1920, and there is nothing in the will which gave the trustees the right to pay them-

selves unearned commissions. Besides, on this point, we have before us only the year 1920. The trust terminates at the death of the widow and with such termination end all rights to commissions on income. Therefore, so much of the payment to Julius Bendheim and Edwin Bendheim as covered services rendered after 1920, should not be allowed as a deduction in that year.

Julius and Edwin received $4,000 in 1919 and $12,571 in 1920, or $16,571 in all, and this was in excess of the commissions allowed them by the law of New York. This excess was allowed by the surrogate's court, not for extraordinary services, but because the widow consented to the payment. This consent on the part of the widow was tantamount to an assignment by her of her income to Julius and Edwin. The widow can not cut down her taxable income by in effect assigning to the other trustees a part of her income, to which they would not have been entitled but for her consent.

Respondent vigorously contends that if any deduction be permitted in this respect, then the only deduction that should be allowed is that part of the commissions which was paid on income received and disbursed in 1920. In response to this, it is pointed out that the accounts of the trustees and of the beneficiary were kept on a cash receipts and disbursements basis. Under this method of accounting, commissions can not be accrued. They can be taken into account for income-tax purposes only when in fact paid, just as the executors can be held to have received taxable income from the commissions only when they receive them. The estate was, therefore, entitled to deduct in 1920, from its gross income, so much of the $12,571 paid in that year, which, plus the $4,000 paid in 1919, represented 1 per cent of all amounts of income received and disbursed up to and including December 31, 1920.

The trustees are entitled to a deduction from the gross income of the estate in 1919, of the $4,000 paid in that year as commissions for receipt and disbursement of income since that amount was less than what was due them in that year.

Respondent did not err in refusing to permit the beneficiary, Henrietta Bendheim, to deduct from her gross income capital losses suffered by the trust and depreciation applicable to trust property. See *Baltzell* v. *Mitchell*, 3 Fed. (2d) 428; *Arthur H. Fleming* v. *Commissioner*, 6 B. T. A. 900; and *Estate of Virginia I. Stern* v. *Commissioner*, 7 B. T. A. 853.

It is not necessary to consider the question whether certain sales of trust property, made in 1920, were or were not made on the installment basis since the beneficiary, Henrietta Bendheim, who is the only person appealing on this question, is not taxable on the income derived from such sales.

The gain made on the sale of the Deal Beach, N. J., property was a capital gain which accrued to the remainderman, and not to the life tenant. Henrietta Bendheim is not taxable on such gain. See *Gibbons* v. *Mahon*, 136 U. S. 549; *United States Trust Co.* v. *Heye*, 224 N. Y. 242; 120 N. E. 645.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*