Clinton L. WHITTEMORE, Jr., and Anne W. Whittemore, Appellants,

v.

UNITED STATES of America, Appellee.

No. 18577.

United States Court of Appeals Eighth Circuit.

Oct. 4, 1967.

Rehearing Denied Nov. 1, 1967.

Harry W. Kroeger, St. Louis, Mo., for appellants; Arthur B. Shepley, Jr., St. Louis, Mo., was on the brief.

Benjamin M. Parker, Atty., Dept. of Justice, Washington, D. C., for appellee; on the brief were Mitchell Rogovin, Asst. Atty. Gen., Tax Div., Dept. of Justice, Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., Richard D. Fitzgibbon, Jr., U. S. Atty., and John A. Newton, Asst. U. S. Atty., St. Louis, Mo.

Before VOGEL, Chief Judge, GIBSON and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

This case presents the question: Are fiduciary fees for the management, conservation or maintenance of that part of a trust or estate consisting of municipal bonds (the interest income which is tax-free) deductible under 26 U.S.C. § 212 (1964)? We reverse the decision of the District Court and hold that to the extent that the municipals produced taxable income or were held for that purpose, the fees, whether measured by the income or the value of the municipals, are deductible and that a reasonable basis for determining the deductible portion is the ratio of taxable to nontaxable income.

In particular, we are concerned with two trusts and one estate. The grantor of the trusts established an intervivos trust in 1910 and a testamentary trust in 1919. After his death, both trusts paid the net annual income to his widow and daughters for their lives.[1] The last surviving daughter died in 1958. The assets of the trusts and daughter's estate were distributed in 1959 and 1960 to the children and grandchildren of the last surviving daughter.

The intervivos trust contained assets at termination valued at $2,307,493, of which $705,400, or 30.5%, was invested in municipals. The testamentary trust contained $4,269,239, of which $1,688,-870, or 39.5%, was invested in municipals. From 1950 to 1959, the investment in municipals varied from a high of 47.8% to a low of 37.8% in the testamentary trust, and from 40.2% to 30.7% in the intervivos trust. The estate consisted of assets totaling $1,365,345, of which $29,213, or 2.985%, were in municipals.[2]

The St. Louis Union Trust Company was the common corporate fiduciary for both trusts and the estate. Upon termination of the testamentary trust, a child of the last surviving daughter was co-trustee; and, until his death, he was a co-executor of his mother's estate. He received one-half of the corporate trustee's fees, both annual and termination, for the testamentary trust during the thirteen months he served as co-trustee.[3]

The fee paid by the intervivos trust, established by agreement, was 2.5% of the yearly income of the trust, and 2.5% of the value of the corpus at termination. The fee paid by the testamentary trust, based on the customary charge of the corporate trustee at the inception of the trust, was 5% of yearly income, and 5% of value of corpus at termination.[4] The executor's fee was determined in accordance with Missouri statutory law. Mo.Rev.Stat. § 473.153 (1955). In ad-

---

1. The income of the testamentary trust for a period of less than one year, after the death of the last surviving daughter and before termination, was paid to the remainderman beneficiaries.

2. This discussion will concern itself with the major trusts—as the lower court and the parties agree that the same principles are applicable to the estate.

3. There had been prior co-trustees; however, the record is incomplete as to the extent of that each received compensation. In addition, the inter vivos trust provided for the approval of investments by the same persons named as co-trustees in the testamentary trust. Apparently, the intervivos trust did not provide for compensation for these persons.

4. The fee was based on the customary charge of the corporate trustee at the inception of the trust. Schedules of this type have been criticized. As was stated in Morrison v. Asher, Mo.App., 361 S.W. 2d 844 (1962):

"* * * [I]n ordinary circumstances, and in the absence of direction or authority in the trust instrument, trustees' commissions should be based upon the amount of yearly income received and paid out, and not based upon the han-

dition, the estate incurred legal expenses totaling $17,500.[5]

Total fiduciary fees of $585,730 were paid as follows:

|  | INTERVIVOS TRUST | TESTA-MENTARY TRUST | ESTATE | TOTAL |
|---|---|---|---|---|
| Annual fees measured by income from time to time collected .......... | $ 64,561.05 | $198,307.74 |  | $262,868.79 |
| Termination fees measured by the value of the corpus ........... | $ 57,263.35 | $230,046.30 | $35,552.27 [6] | $322,861.92 |
| TOTALS .. | $121,824.40 | $428,354.04 | $35,552.27 | $585,730.71 |

———◆———

Interest income from the municipals was included in total income for the purpose of determining the trustee's annual compensation but consistent with 26 U.S.C. § 103 (1964) was excluded from gross income for income tax purposes. That portion of the annual fee deemed allocable to interest on the municipals was not deducted in computing the annual income tax. The basis of the alloca-

dling of the corpus except by and with court approval after a showing of circumstances justifying such. * * *"
Id. at 851.
Particular problems with termination compensation based on principal have been detailed:
"Where a principal commission is allowed, the trustee and the income beneficiary are both concerned with the time of its payment. From the trustee's viewpoint, a 2% principal commission on a twenty-year trust taken at inception is worth twice as much as the same commission at termination. The income beneficiary, on the other hand, loses by a payment at the beginning, for he then will receive the income on only 98% of the original investment. Apart from these considerations, payment of principal commission in a lump sum seems markedly less fair than annual payments. The amount of the lump sum is inherently fortuitous, in that it depends on the state of the economic cycle in the year of payment. When the principal commission is paid annually, the total fee eventually received fairly represents the value of the assets over the life of the trust.
* * * * *
"Lump sum payment of the principal commission, with annual compensation confined to income, proved satisfactory as long as the prime objective of trusteeship was conserving the trust *res*. But when trustees became active managers with the duty to make the property productive for life beneficiaries, both the beneficiary and the trustee got caught in the squeeze between higher costs and a lower return on trust investments. At the same time, settlors began to extend their trusts to the maximum duration permitted by law in order to effectuate tax savings. But the principal commission remained the same regardless of the trust's duration." [Footnotes omitted.] 58 YALE L.J. 924, 951–52 (1949).

5. The lower court and the parties agree that the legal expenses of the estate in this case, like the executor's fees, are governed by the same principles.

6. There is no evidence that any compensation was paid to the executors other than that provided by statute. The statutory compensation is calculated according to a graduated scale providing for a percentage of estate assets. However, at one point, the taxpayer notes that "4% of the fees were based on income." The basis for this statement in the record is unclear but, apparently, it is based on Interrogatory 21. Since upon distribution the estate included accumulated income, apparently the portion of the fee which the taxpayer asserts is "based on income" is that portion attributable to the accumulated income

tion was the ratio of tax-exempt income to total income. The entire termination fees were taken as deductions from gross income in the years in which each trust terminated. As the fees exceeded taxable income, the beneficiary took the excess deduction against his own income in accordance with the provisions of 26 U.S.C. § 642 (1964).

In auditing the fiduciary and individual returns, the District Director of the Internal Revenue Service refused to permit the taxpayer to deduct any part of the termination fees paid for services of the trustee in administering that part of the corpus invested in municipals. The Director used the ratio of the value of the municipals to the value of the total assets to determine what portion of the fees represented the efforts of the trustee in administering the municipals. In explaining the disallowance, it was stated:

"Since the municipal bonds' income is tax exempt, the commission charged on these assets would not be deductible under Section 1.265–1(a)–2 of the Regulations which does not allow a deduction for expenses pertaining to exempt income."

A deficiency was assessed and paid. The taxpayer,[7] as a beneficiary entitled to the benefit of any excess deduction allowed, filed a timely claim for a refund. Upon disallowance of his claim, an action was commenced in U.S. District Court.[8]

The District Court sustained the position of the Commissioner of Internal Revenue and held that the Commissioner had properly refused to permit the taxpayer to deduct any part of the termination fee paid for services relating to the municipals:

" * * * plaintiffs would not be entitled to a refund as to any portion of the termination compensation, executor's and attorney's fees paid in the trusts and the estate allocable to the municipal bonds, regardless of allocation of expenses between production of income and management, conservation or maintenance of property held for production of income, as this is payment primarily for services previously performed, and regardless of what we call it was primarily aimed at producing income. * * * "

The court also stated that even if that portion of the termination fees (based on the value of the municipals) which relate to the preservation of the corpus was deductible, it would not be allowed here because the taxpayer had failed to establish the extent to which the trustee's services related to preservation of the corpus.

The taxpayer contends: that the termination fees were expenses solely for the management, conservation or maintenance of property held for the production of income, and were fully deductible under the provisions of § 212(2) of the Internal Revenue Code without regard to the type of income produced; and that expenses under § 212(2) are not subject to disallowance under § 265(1) of the Code.

He argues, in the alternative, that if the termination fees were not entirely deductible, they were at least partially deductible. In the event that his alternative position is accepted, he urges that the allocation should be based on the ratio of tax-exempt income to total income rather than the ratio of the value of municipals to the value of total assets.

In our judgment, a proper construction of §§ 212 and 265 requires that we reject the taxpayer's principal contention that the entire termination fee is deductible,

7. Anne W. Whittemore is one of the appellants in this Court solely because she had joined her husband in filing joint federal income tax returns. Consequently, we will herein below refer to the appellants in the singular as "taxpayer."

8. The trusts, estates and other beneficiaries also have resisted similar disallowances. Those litigating in this circuit have stipulated to be bound by this ap-

peal. Estate of Henry H. Whittemore and Margaret McClay Whittemore v. United States, Nos. 18622 and 18623; Fowler v. United States, No. 18624. A Tenth Circuit District Court has followed the District Court in our circuit. Case v. United States, Civil No. 4928, D.Wyo. Nov. 4, 1966. The appeal in that case is being held in abeyance pending this appeal.

and the District Court's holding that no part of it is deductible.

(1) *Section 212 permits expenses for the production of income, or the management, conservation or maintenance for property held for the production of income to be deducted.*

It provides:

"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

"(1) for the production or collection of income;

"(2) for the management, conservation, or maintenance of property held for the production of income; or

* * * "

The leading case interpreting § 212 is Bingham's Trust v. Commissioner of Int. Rev., 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670 (1945). In that case, the Commissioner had argued that administrative and legal expenses incurred in terminating a trust and distributing the corpus to beneficiaries were not deductible under § 212 since the expenses were not for the production of income. The case established that the expenses incurred in disbursing trust assets are within § 212(2) even though such expenses obviously are not incurred with the intent that they will themselves produce income—it is enough that the expense is for the management, conservation or maintenance of property that is held for the production of income. Chief Justice Stone, delivering the opinion of the Court, stated:

"Nor is there merit in the court's conclusion that the expenses were not deductible because they were not for the production of income. Section [212] * * * provides for two classes of deduction, expenses 'for the production * * * of income' and expenses of 'management, conservation, or maintenance of property held for the production of income.' To read this section as requiring that expenses be paid for the production of income in order to be deductible, is to make unneces-

sary and to read out of the section the provision for the deduction of expenses of management of property held for the production of income.

"There is no warrant for such a construction. Section [212] is comparable and *in pari materia* with § [162], authorizing the deduction of business or trade expenses. Such expenses need not relate *directly* to the production of income for the business. * * *

"Since there is no requirement that business expenses be for the production of income, there is no reason for that requirement in the case of like expenses of managing a trust, so long as they are in connection with the management of property which is held for the production of income. Section [212] * * * permits deductions of management expenses of the trust, even though the particular expense was not an expense *directly* producing income. It follows that all of the items of expense here in question are deductible if, * * *, they are expenses of management or conservation of the trust fund, whether their expenditure did or did not result in the production of income."

Id. at 373–374, 65 S.Ct. at 1237 (Emphasis added).

(2) *Section 265(1) limits the deductibility of expenses otherwise allowable under § 212(2) to those incurred in whole or in part for the production of taxable income.*

The *Bingham* case did not, as urged by the taxpayer, answer the question— are all expenses incurred for the management, conservation or maintenance of property held for the production of income deductible or may such expenses be nondeductible in whole or part by operation of 26 U.S.C. § 265(1) (1964)? It provides:

"No deduction shall be allowed for—

"(1) *Expenses.*—Any amount otherwise allowable as a deduction which is allocable to one or more classes of income other than interest (whether or not any amount of income of that class

or classes is received or accrued) wholly exempt from the taxes imposed by this subtitle or any amount otherwise allowable under section 212 (relating to expenses for production of income) which is allocable to interest (whether or not any amount of such interest is received or accrued) wholly exempt from the taxes imposed by this subtitle."

Since expenses deductible under §§ 212(1) or (2) are either directly or indirectly related to income, the problem becomes apparent—does the language of § 265(1) disallowing expenses "allocable" to tax-exempt interest refer only to expenses *directly* relating to income, or does it also encompass expenses *indirectly* relating to income?

■■ The current regulation, Treas. Reg. § 1.212–1 (1954), appears to require that expenses deductible under both subsections of § 212 be apportioned between taxable and non-taxable income.

"(e) A deduction under section 212 is subject to the restrictions and limitations in part IX (section 261 and following), subchapter B, chapter 1 of the Code, relating to items not deductible. *Thus, no deduction is allowable under section 212* for any amount allocable to the production or collection of one or more classes of income which are not includible in gross income, or *for any amount allocable to the management, conservation or maintenance of property held for the production of income which is not included in gross income.* See section 265." [Emphasis added.]

However, the taxpayer argues that subsection (i) of the same regulation permits § 212(2) expenses to be deducted in their entirety:

"'(i) Reasonable amounts paid or incurred by the fiduciary of an estate or trust on account of administration expenses, including fiduciaries' fees and expenses of litigation, which are ordinary and necessary in connection with the performance of the duties of administration are deductible under section 212, notwithstanding that the estate or trust is not engaged in a trade or business, *except to the extent that such expenses are allocable to the production or collection of tax-exempt income.* * * *'" [Emphasis added.]

We consider subsection (e) to be controlling[9] since it was there that the Treasury specifically addressed itself to the question of which § 212 expenses were to be disallowed by § 265. This subsection is also consistent with subsection (a) (1) of the same regulation which clearly states that an expense may be deducted under § 212 only if it has been incurred "(i) for the production or collection of *income which, if and when realized, will be required to be included in income for Federal income tax purposes* or (ii) for the management, conservation, or maintenance of property held for the production of *such income* * * *." (Emphasis added.)

The Tax Court has faced the issue presented by §§ 212(2) and 265(1) in the context of legal expenses incurred by the estates of living persons and has concluded that expenses under § 212(2) must be apportioned between taxable and non-taxable income. In Estate of Frederick Cecil Bartholomew, 4 T.C. 349 (1944), the estate of a child actor incurred expenses in resisting claims of his parents against his estate. In Estate of Elsie Weil, 13 CCH Tax Court Memorandum Decisions 653 (1954), legal expenses were incurred in connection with the adjudication of incompetency and the appointment of a Committee of the person and estate of the taxpayer. In both cases, the Court held that such expenses were for the management, conservation and main-

9. Since the regulations are promulgated under legislative authority, 26 U.S.C. § 7805 (1964), they are to be given weight in the interpretive process. E.g., Maryland Casualty Co. v. United States, 251 U.S. 342, 349, 40 S.Ct. 155, 64 L.Ed. 297 (1920); Economy Savings & Loan Co. v. Commissioner of Int. Rev., 158 F.2d 472 (6th Cir. 1946); Jaubert Bros. v. United States, 141 F.2d 206 (5th Cir. 1944).

tenance of the property held for the production of income; and went on to hold that a portion of that expense was to be disallowed because the estates produced, in part, nontaxable bond interest.

On a third occasion, the Court in Valerie Norrie Pozzo di Borgo, 23 T.C. 76 (1954), in which the facts closely parallel those here, held that the taxpayer had the burden of proving "that all [termination] commissions paid out of principal were paid solely for management, conservation, or maintenance of the trust property." Id. at 77. Having found that the taxpayer had not carried the burden of proving that the commissions were *solely* for the management * * * of trust corpus, the Court stated: "It is thus unnecessary for us to consider whether or not the provisions of section 265(1) would have been applicable if petitioner had established the foundation of fact which would have been essential to its materiality." Id. at 81.

■ It appears from a reading of *di Borgo* that the taxpayer took an all or nothing approach and did not suggest, as the taxpayer does here, that a termination fee based in part on the value of municipals is deductible to the extent it is paid for the management of municipals held for appreciation. In any event, we do not consider *di Borgo* as having established that no part of a fiduciary fee paid for the management of municipals held for the production of taxable as well as nontaxable income is deductible. Nor do we consider it as dicta for the proposition that *all* of a fiduciary fee paid for the management of property (including municipals) held for the production of income is deductible if clear proof is developed relating the fee to that purpose. To the extent that *di Borgo* attached importance to the distinction between services rendered for the production of income and those for management of property held for its production, we de-

cline to follow it. In our judgment, the test of deductibility is the nature of the income directly or indirectly produced by the services. The conclusion reached in *Bartholomew* and *Weil*[10] is, in our judgment, supported by the language of the disputed sections.

Initially, it should be noted that the second clause of § 265(1) disallows expenses allocable to tax-exempt interest which are "otherwise allowable under § 212." Since § 212 is referred to as a whole, it seems clear that the plain meaning of § 265 is to disallow expenses otherwise allowable under either §§ 212(1) or (2).

Although § 212 is referred to as a whole in § 265, arguably that reference is immediately qualified by a parenthetical suggesting a different result. Including the parenthetical, the section provides:

"No deduction shall be allowed for—

"* * * any amount otherwise allowable under section 212 (*relating to expenses for production of income*) which is allocable to interest (whether or not any amount of such interest is received or accrued) wholly exempt from the taxes imposed by this subtitle." [Empasis added.]

Thus, it could be argued that "(* * * expenses for production of income)" parallels § 212(1) which generally allows "expenses * * * for the production or collection of income" and does not parallel § 212(2) which generally allows "expenses * * * for the management, conservation, or maintenance of property held for the production of income." However, the argument is without merit when considered in the light of the statutory evolution of §§ 212 and 265.

Under the 1939 Internal Revenue Code, as originally enacted, the only provision apparently allowing a deduction for

10. Although the Tax Court is an administrative body, its judicial character is respected. Reo Motors v. Commissioner of Internal Revenue, 219 F.2d 610, 612 (6th Cir. 1955); Stern v. Commissioner of Internal Revenue, 215 F.2d 701, 707–708 (3rd Cir. 1954).

trustee's fees was § 23(a) which provided a deduction for "trade or business expense." [11] However, in 1941, the Supreme Court held that private investment trusts were not engaged in carrying on a "trade or business" and, thus, could not deduct trustee fees.[12] In 1942, Congress responded by enacting § 23(a)(2):[13]

"23. Deductions from gross income. In computing net income there shall be allowed as deductions:

"(a) Expenses.

\* \* \* \* \* \*

"(2) Nontrade or nonbusiness expenses. In the case of an individual,

all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."

The same section of the 1942 Revenue Act amended § 24(a)(5) of the 1939 Code [14] to provide:

"24. Items not deductible

"(a) General rule. In computing net income no deduction shall in any case be allowed in respect of—

\* \* \* \* \* \*

"(5) Any amount otherwise allowable as a deduction which is allocable

11. Many lower courts had allowed a deduction for trustee fees as a "trade or business expense." E.g., John H. Watson, Jr., et al., Trustees, 35 B.T.A. 706 (1937); Henrietta Bendheim et al., 8 B.T.A. 158 (1927); William W. Mead et al., Executors, 6 B.T.A. 752 (1927); H. Alfred Hansen, Executor, 6 B.T.A. 860 (1927); Grace M. Knox, et al., Executors, 3 B.T.A. 143 (1925).

12. City Bank Farmers Trust Co. v. Helvering, 313 U.S. 121, 61 S.Ct. 896, 85 L. Ed. 1227 (1941).

The Court in City Bank Farmers followed Higgins v. Commissioner of Internal Revenue, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783 (1941), in which the Court held that investment expenses of an individual investor were not "trade or business" expenses.

13. Revenue Act of 1942, 56 Stat. 798 (1942); 26 U.S.C.A. INTERNAL REVENUE ACTS BEGINNING WITH 1940, p. 161 (1946).

14. Prior to 1942, only the first clause of § 24(a)(5) was contained in the Code. This had been first enacted in 1934. Compare, Revenue Act of 1932, § 24(a), 47 Stat. 169 (1932); 26 U.S.C.A. INTERNAL REVENUE ACTS, 1924 TO 1939, p. 475 (1940), with Revenue Act of 1934, § 24(a), 48 Stat. 680, 26 U.S.C.A. INTERNAL REVENUE ACTS, 1924 TO 1939, p. 659 (1940).

Prior to the 1941 holding of the Supreme Court in City Bank Farmers, see note 12, supra, there were a few cases which allowed the deduction of trustee fees as business expenses. See note 11, supra. In these cases, the further issue involved in these proceedings arose—i. e.,

whether the fees allocable to municipal bonds were to be disallowed because the bond income was tax-exempt.

In 1925, when the issue first arose, there was no statute disallowing expenses, otherwise deductible, which were allocable to tax-exempt income. Thus, in Grace M. Knox, et al., Executors, 3 B.T.A. 143 (1925), the Tax Court held:

"\* \* \* The executors and trustees are essentially employees of the estate. Their compensation is one of the ordinary and necessary expenses of the estate and properly deductible from the income thereof without regard to the fact that a portion of the estate's income is exempt from taxation." Id. at 146.

The Revenue Act of 1934 first provided that certain deductions allocable to tax-exempt income were disallowed:

"SEC. 24. ITEMS NOT DEDUCTIBLE.

"(a) GENERAL RULE. In computing net income no deduction shall in any case be allowed in respect of—

\* \* \* \* \*

"(5) Any amount otherwise allowable as a deduction which is allocable to one or more classes of income other than interest \* \* \* wholly exempt from the taxes imposed by this chapter."

This provision is essentially what is presently the first clause of § 265(1). Of course, the clear implication of the phrase "other than interest" is that expenses allocable to the tax-exempt interest are deductible. Thus, the Tax Court was compelled to follow Knox. Cf. Corrigan v. Commissioner of Internal Revenue, 155 F.2d 164 (6th Cir. 1946).

to one or more classes of income other than interest (whether or not any amount of income of that class or classes is received or accrued) wholly exempt from the taxes imposed by this chapter, *or any amount otherwise allowable under section 23(a)(2) which is allocable to interest (whether or not any amount of such interest is received or accrued) wholly exempt from the taxes imposed by this chapter; * * *"* [Emphasis added.]

Since § 24(a) (5), which is the predecessor of § 265, did not, at the time of its enactment, contain the parenthetical "(relating to the production of income)" —it appears that § 24(a) (5) disallows expenses allocable to tax-exempt interest either for the production of income or for the management, conservation and maintenance of property held for the production of income.

In 1954, § 23(a) (2) was reenacted in §§ 212(1) and (2). The 1954 Code also, for the first time, provided for a deduction of expenses relating to the payment of taxes.[15] This provision was enacted in § 212(3):

"§ 212 Expenses for production of income

"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

    \*     \*     \*     \*     \*     \*

"(3) in connection with the determination, collection, or refund of any tax."

At the same time § 24(a) (5) became § 265, it was also at that time that the parenthetical—"(relating to expenses for production of income)"—first appeared in that section.[16] Since the legislative history indicates that no substantive change in § 265 was intended,[17] the inclusion of the parenthetical, in the reenacted section, only makes it clear that expenses relating to the determination collection or refund of taxes would not be disallowed because the expense involved issues related to tax-exempt interest. For example, the litigation expenses incurred by the taxpayers in this appeal would presumably be deductible even though issues are presented in this case relating to the interest income from municipals.[18]

Not only does the language of the statute suggest that both §§ 212(1) and (2) expenses must be apportioned between taxable and nontaxable income; the policy underlying the statute also suggests the same result. As was noted before, in 1941 the Supreme Court held that investment counseling expenses were not deductible because the then applicable section of the Code only allowed deductions for "trade or business expenses." However, since nonbusiness income was included in gross income, Congress enacted what is now §§ 212(1) and (2) which provides that certain nonbusiness expenses are deductible. Thus, by providing for nonbusiness expenses, Congress furthered the underlying philosophy of a tax on net income rather than on gross income. This is evidenced by the statement of Representative Disney:

"The Internal Revenue Code provides that expenses incurred in the trade or business of the taxpayer may be deducted in arriving at *net income.* The law also provides that personal

---

15. The enactment of § 212(3) was in response to Lykes v. United States, 343 U.S. 118, 72 S.Ct. 585, 96 L.Ed. 791 (1952).

16. Compare, 26 U.S.C.A. INTERNAL REVENUE CODE OF 1939 AS AMENDED § 23(a) (2) (1955), with INT.REV. CODE OF 1954, § 212, 68A Stat. 3 (1954).

17. H.R.Rep.No. 1337, U.S.CODE CONG. & ADM.NEWS, pp. 4025, 4196 (1954);

Sen.Rep.No. 1622, U.S.CODE CONG. & ADM.NEWS, pp. 4621, 4855 (1954).

18. Cf. Kaufmann v. United States, D.C., 227 F.Supp. 807 (1963) (legal expenses incurred in obtaining a ruling that a proposed stock exchange was tax free held to be deductible under § 212(3)). Compare, TREA.REG. § 1.212–1(a) (1) (i) & (ii), with TREA.REG. § 1.212–1(a) (1) (iii).

living or family expenses may not be deducted. There is left a great borderland of doubt. Trade or business has received such a narrow interpretation that many meritorious deductions are denied. The Supreme Court, in the case of Higgins v. Commissioner of Internal Revenue (312 U.S. 212, 61 S. Ct. 475, 85 L.Ed. 783 (1941)), held that expenses in connection with a taxpayer's investments in income-producing properties were not deductible, on the ground that making casual investments was not a trade or business. *Since the income from such investments is clearly taxable it is inequitable to deny the deduction of expenses attributable to such investments."* [19] [Emphasis added.]

The enactment of §§ 212(1) and (2) matched up nonbusiness expenses with the current or future nonbusiness income.

■ Since the section matches nonbusiness expenses to taxable nonbusiness income, it follows that to the extent that the nonbusiness income need not be included in the gross taxable income, the corresponding expense should not be allowed. If it were otherwise, the taxpayer would receive a double advantage—he could take a deduction against other taxable income and yet receive tax free the income to which the expense related. The purpose of § 265(1) is to eliminate this double advantage. Cf. C.I.R. v. McDonald, 320 F.2d 109 (5th Cir. 1963); Lewis v. Commissioner of Internal Revenue, 47 F.2d 32 (3d Cir. 1931); James F. Curtis, 3 T.C. 648 (1944); TREA.REG. 118, § 39.27(a)–4–(a) (2) (1942).

In this case, the taxpayer argues that no double advantage will accrue to him since the capital gains income from the municipals is taxable.[20] However, the argument ignores the fact that the municipals are currently [21] held for the production of two types of income—nontaxable coupon interest and taxable capital gains income. Furthermore, § 212 provides a deduction for nonbusiness expenses because the nonbusiness income is taxable. Thus, to the extent that the trust holds the municipals for the production of nontaxable income, that portion of the § 212(2) expenses must be disallowed.[22] Conversely, to the extent that municipals are held for the production of taxable income, a portion of the expense must be allowed.

---

19. 88th Cong.Rec., Part 5, p. 6376.
The House Report indicates the same policy:
"The existing law allows taxpayers to deduct expenses incurred in connection with a trade or business. Due partly to the inadequacy of the statute and partly to court decisions, nontrade or nonbusiness expenses are not deductible, although nontrade or nonbusiness income is fully subject to tax. *The bill corrects this inequity by allowing all of the ordinary and necessary expenses paid or incurred for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income.* Thus, whether or not the expense is in connection with the taxpayer's trade or business, if it is expended in the pursuit of income or in connection with property held for the production of income, it is allowable."
H.R.Rep.No. 2333, 77th Cong., 2d Sess., pp. 46, 74–76, 1942–2 CUM.BULL. 372, 410.

20. In general, capital gains on the sale of municipal bonds are taxable. Willcuts v. Bunn, 282 U.S. 216, 51 S.Ct. 125, 75 L. Ed. 304 (1931). However, the original issue discount is not taxable. Rev.Rul. 60–210, CUM.BULL. 1960–1, 38.

21. As to when property is "held for the production of income." See BITTKER, FEDERAL INCOME, ESTATE AND GIFT TAXATION, 245 (1964).

22. In support of his basic argument that no "double advantage" will accrue, the taxpayer urges that the coupon interest is separable from the bond itself. We cannot accept the taxpayer's premise that the tax incidence of the coupons is not imparted, at least partially to the bond itself, since as was stated in Helvering v. Horst, 311 U.S. 112, 120, 61 S.Ct. 144, 85 L.Ed. 75 (1940), "the fruit is not to be attributed to a different tree from that on which it grew."

(3) *A reasonable basis for determining the deductible portion of the fiduciary's termination fee as it relates to the municipals in trust is the ratio of taxable to nontaxable income over the life of the trust.*

The government's allocation (based on the ratio of municipals to other securities) would deny the taxpayer the right to deduct any portion of the termination fee computed on the value of the municipals. The taxpayer's allocation would permit the deduction of the entire fee.

Neither approach is proper for neither recognizes that a fiduciary invests in municipals to produce taxable and nontaxable income, and manages them for the same purposes.

While we accept the trial court's finding that the fiduciary here invested in municipals for the *primary* purpose of producing tax-exempt income,[23] it does not follow that the primary purpose was the only one. Other factors, notably appreciation[24] and safety,[25] enter into an investment decision.

23. It is clear that the principal service rendered by the trustee is that of investment counseling. The government does not question that expenses for investment counseling are generally deductible.

However, in general, § 212 requires that a taxpayer have an "existing interest" in property before he can deduct expenses relating to that property. See generally, Fleischer, The Tax Treatment of Expenses Incurred in Investigation for a Business or Capital Investment, 14 TAX L.REV. 567, 580–84 (1959). Thus, it has been noted that "the existing interest requirement would seem to compel a finding that at least a certain part of the fees paid to an investment counsellor should be nondeductible. For some of the advice given by such an individual pertains to whether or not a taxpayer should enter into a certain investment [sic]." Id. at 581, n. 70. Nevertheless, the cases seem to uniformly hold that investment counseling fees are generally deductible. Amelia E. Collins, 3 CCH Tax Court Memorandum Decisions 223 (1944); Andrew Jergens, 2 CCH Tax Court Memorandum Decisions 385 (1943); Winifred L. Milner Est., 1 CCH Tax Court Memorandum Decisions 513 (1943); Elma M. Williams, 3 T.C. 200 (1944); Edward Mallinckrodt, Jr., 2 T.C. 1128 (1943), aff'd on other grounds, 146 F.2d 1 (8th Cir. 1945), cert. denied, 324 U.S. 871, 65 S.Ct. 1017, 89 L.Ed. 1426 (1945). Furthermore, the cost of managing investments are allowable, Barbara S. Kirkland et al., 1 CCH Tax Court Memorandum Decisions 99 (1942), rev'd on other grounds in Stoddard v. Commissioner of Internal Revenue, 141 F.2d 76 (2d Cir. 1944); Ezra Winter et al., 1 CCH Tax Court Memorandum Decisions 274 (1942); Edward Mallinckrodt, Jr., supra; Frederick B. Rentschler, 1 T.C. 814 (1943), as are the costs of accounts' and bookkeepers' services, Ezra Winter

et al., supra, and Edward Mallinckrodt, Jr., supra.

24. The municipal bond yield average for long-term bonds in the four highest ratings, Aaa to Baa, has ranged from a low of 1.22% in April, 1946, to a high of 4.16% in August, 1966. MOODY'S MUNICIPAL AND GOVERNMENTAL MANUAL, a23, a25 (1967). An examination of the bond market of any given date indicates that the coupon rate of interest may be the principal factor in the total yield or only a fraction of it—e.g., $40,000 of New York State bonds maturing in 1987 had a coupon rate of 2.5% and a yield of 4.30%. Offerings of Tax Exempt Securities, The First Boston Corporation, August 23, 1967. In contrast, on the offering sheet, $230,000 of New York City bonds maturing in 1981 had a coupon rate of 4.5% and a yield of 4.45%.

25. The trustee is under a legal duty to preserve the corpus. The prudent man rule emphasizes the income and safety factors the trustee is to consider in making investments. As established in Harvard College v. Amory, 9 Pick. 446, 461 (Mass.1830), that rule is:

"All that can be required of a trustee to invest, is, that he shall conduct himself faithfully and exercise a sound discretion. He is to observe how men of prudence, discretion and intelligence manage their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income, as well as the probable safety of the capital to be invested."

Furthermore in this case, the grantor of the trust specifically directed the trustee to conserve the corpus: " * * * having in mind the preservation of said trust estate and the conservation of the interests of the beneficiaries hereunder—and

The ratio of taxable to nontaxable income was used as a basis for determining the extent to which the trustee's annual fees were deductible. CASNER, ESTATE PLANNING, Vol. II, 1161 n. 17 (1961). Cf. William H. Jamison, 8 T.C. 173, 182 (1947); George N. Meissner, 8 T.C. 780 (1947); Edward Mallinckrodt, Jr., 2 T.C. 1128 (1943); Cynthia K. Herbst, 2 CCH Tax Court Memorandum Decisions 361, 364–65 (1943). Contra, Estate of Elsie Weil, supra. But cf. Manufacturers Hanover Trust Co. v. United States, 160 Ct.Cl. 582, 312 F.2d 785, 794, n. 12 (1963); Valerie Norrie Pozzo di Borgo, supra; Kilborn, Deductible Expenses; Transactions Entered Into for Profit; Income-Producing Property, 21 N.Y.U.FED.TAX INST. We see no sound reason why the same ratio cannot be used to determine the extent to which the termination fees are deductible. Indeed, support for such a position is contained in the trial court's findings that the annual and termination fees should be considered as "one" and as having been rendered for "past services."

While no formula can measure with exactness the value of a fiduciary's fees as they relate to taxable and nontaxable income, a ratio based on the earnings from each serves as a reasonably accurate measuring stick, particularly when the life of the trust extends, as here, over an extended period of years.

We believe the income ratio to be a reasonable one for allocating the expenses for the production of taxable income and for the production of nontaxable income. It is simple and is supported not only by precedent but also by the manner in which the annual fiduciary's fees were handled. Clearly, the asset ratio used by the government is inappropriate because, as was already noted, that method disallows the total portion of the fees allocable to municipals. Thus, since the municipals produce both taxable and nontaxable income, a second allocation would be necessary if it were used. If the second allocation were on an income basis, the result achieved would be similar to that under the formula we suggest. If some other rule of thumb were used, it would have to be supported by reasons justifying its use. No other logical allocation formula has been suggested here.

■■ To summarize, we hold a fiduciary's fee (annual or termination) for the production of *taxable* income or for the management, conservation or maintenance of property held for the production of *taxable* income is deductible under §§ 212(1) and (2) and is not disallowed by § 265. Thus, to the extent that municipals in a trust or an estate produce *taxable* income or are held for that purpose, the fee of the fiduciary, whether measured by the income or value of the municipals in the trust, is deductible.

■ Under the facts of this case, a reasonable basis for determining the extent to which the fiduciary's fee was related to taxable income and thus deductible is the ratio of taxable income to nontaxable income over the life of the trust.

This matter is reversed and remanded to the District Court for action consistent with this opinion.

---

in this connection I wish to express my feeling that in the investment of trust funds the first thought of the trustees should be the security of th [sic] investment—the rate of return being a matter of secondary importance." See GRAHAM, DODD AND COTTLE, SECURITY ANALYSIS, Part 3 (4th ed. 1962); Morris, Municipal Bond Ratings

—Perspective, Evaluation and Improvements, The Weekly Bond Buyer, Dec. 19, 1966, p. 4, col. 2.

To the extent that safety and other collateral factors, such as differentiation and flexibility, may affect taxable and nontaxable income over a period of years, they will be reflected in the income produced.